In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-12-00119-CR

FARRAIN JOSEPH COMEAUX A/K/A FARRAIN J. COMEAUX, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 10-08719**

**OPINION**

A jury found Farrain Joseph Comeaux[1] guilty of burglarizing a habitation. *See* Tex. Penal Code Ann. § 30.02(a)(1), (c)(2) (West 2011). Comeaux raises five issues in his appeal. We conclude that none of Comeaux's issues entitle him to receive a new trial or require his acquittal. We affirm the trial court's judgment.

---

[1]The indictment alleges that Comeaux is also known as Farrain J. Comeaux.

1

Jury Selection

In issue one, Comeaux complains that the trial court erred by denying the challenge for cause that he lodged against prospective juror 23 (PJ 23). During jury selection, PJ 23 informed Comeaux's attorney that he had been burglarized. When Comeaux's attorney asked PJ 23 if he could nevertheless be fair, PJ 23 stated: "I don't think you'd want me on there. I have real strong feelings about it." When Comeaux's attorney concluded, he asked the prospective jurors to indicate whether they might not be appropriate jurors for a case involving an alleged burglary; PJ 23 raised his hand. At that point, the trial court excused the other prospective jurors, and allowed the attorneys to ask PJ 23 more questions.

Outside the presence of the other prospective jurors, the prosecutor asked whether PJ 23 could set aside his experience and make a decision in the case based on the evidence. PJ 23 responded:

[PJ 23]: I don't think -- I'd glad[l]y serve on a jury. I don't think this one --

[Prosecutor]: Do you already feel like he's guilty?

[PJ 23]: No, I don't feel that way. I just don't feel I can be fair.

[Prosecutor]: You feel like you'd be leaning toward the State?

[PJ 23]: Probably lean more toward him.

2

[Prosecutor]: Oh, okay. I guess I was confused. Sorry. You don't feel like you'd be able to make a decision in the case based on the evidence and facts of this case alone and put you[r] prior experience aside and follow the law the Judge gives you?

[PJ 23]: Honestly, no.

After the prosecutor finished questioning PJ 23, Comeaux's attorney asked:

[Defense]: Why do you feel you would be leaning toward Mr. Comeaux? Everything you've told me was that you've been -- you had -- you've been burglarized yourself --

[PJ 23]: I said wrong -- I put it the wrong way.

[Defense]: What did you mean?

[PJ 23]: I'd be more against him. Sorry.

[Defense]: Okay. And that was because the conversation we'd had about the fact that you'd been burglarized in the past and --

[PJ 23]: Uh-huh.

[Defense]: -- you just don't think you could be fair and, to be on the safe side, you'd -- you think you shouldn't be on a -- you shouldn't judge a person who's accused of a burglary case because -- since you were burglarized, you'd be more likely or -- to have that information you -- irrespective of the evidence that you saw.

[PJ 23]: Right. When I got burglarized, it changed a bunch of things in me. My whole lifestyle changed. They -- because the one guy that did it, I think there was more than one involved.

[Defense]: Okay. I just move to strike for cause, Judge.

THE COURT: [Prosecutor]?

3

[Prosecutor]: I don't know, Judge.

THE COURT: Here's what it all boils down to: Are you going to let that experience cause you to violate the law and write down false answers?

[PJ 23]: I'm not trying to violate the law. It will be in the back of my mind.

THE COURT: It doesn't -- if it's in the back of your mind -- it's okay to be in the back of your mind out here; okay? Just because you've experienced life and I've experienced life, that doesn't mean that we don't get to serve as a juror.

[PJ 23]: Right.

THE COURT: The question is this: Can you sit and listen to the evidence -- and you're going to have to raise your right hand; you are going to have to swear or affirm to God that you're going to answer the questions truthfully. If [the prosecutor] does her job and proves to you beyond a reasonable doubt that that man's guilty, are you going to go back down there and write down that he's not guilty?

[PJ 23]: No.

THE COURT: Okay. On the other side of that, if she doesn't do her job and she doesn't prove this case to you beyond a reasonable doubt and you know that she hasn't done her job, are you going to go back there and find him guilty and help her just to hurt this man?

[PJ 23]: I could be fair.

THE COURT: That's what we need to know. The bottom line to it is, is that you can either be fair or you cannot be fair. You will either follow the law and your oath as a juror or you won't. And, you know, I've listened to it. I know you don't mean to confuse, but I think she was a little confused. I think he's been a little confused. The bottom line to it is all we want is 12 people that can do the right thing. But,

4

it's -- some people say, Judge, I will not follow the law. I will go back there, and I will hurt this guy no matter what I have to do. She could not put on any evidence, but I'm so mad at people that burglarize houses I'm going to punish this man as a result of my anger.

[PJ 23]: No.

THE COURT: We don't want those folks.

[PJ 23]: Right.

THE COURT: But the bottom line to it is, I know you've had bad experiences. Other jurors have had bad experiences. You don't have to leave that outside. That's stuff that you can take in there and you can consider all that. But at the end of the day, you can't help her do her job, and you can't punish this man if she doesn't do her job. So, my question, again: Can you follow the law and render a fair and impartial verdict, or are you going to violate the law, are you going to violate your oath as a juror and go against this man just because you've been a victim in the past?

[PJ 23]: No. I can do what's right.

Because the trial court refused to strike PJ 23 for cause, Comeaux's attorney used one of his peremptory strikes to strike him. Then, Comeaux's attorney requested an additional peremptory strike, informing the trial court that if given another strike, he would use it on PJ 27. The trial court refused to give Comeaux an additional strike. The record also shows that Comeaux used his strikes on prospective jurors 2, 5, 10, 13, 20, 23, 24, 26, 31, and 34. Subsequently, PJ 27, the prospective juror that Comeaux identified as objectionable, was seated as the twelfth juror.

5

The record shows that Comeaux used all ten of his peremptory challenges. In non-capital felony cases, the State and the defendant are each allocated ten peremptory challenges. Tex. Code Crim. Proc. Ann. art. 35.15(b) (West 2006). The State also used all ten of its peremptory challenges, striking prospective jurors 3, 8, 10, 13, 14, 16, 18, 19, 20, and 21.

Under the Code of Criminal Procedure, a defendant may challenge a prospective juror for cause if the juror has "bias or prejudice in favor of or against the defendant[,]" or "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely[.]" *Id.* art. 35.16(a)(9), (c)(2) (West 2006). "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." *Id*. art. 35.16(a). Bias against the law includes a potential juror's refusal to consider or apply the relevant law because the potential juror's beliefs or opinions would prevent or substantially impair the performance of the juror's duties. *Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). The test of whether the juror should be dismissed is whether the bias or prejudice would substantially impair the juror's ability to carry out his oath and instructions in accordance with the law. *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009); *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).

Because the trial judge is in a better position than an appellate court to evaluate a prospective juror's demeanor and response, the trial court's decision to deny a challenge for cause is reviewed with considerable deference. *Gardner*, 306 S.W.3d at 295-96. "A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion." *Id.* at 296. We review the entire record of the voir dire to determine whether sufficient evidence supports the trial court's ruling. *Feldman*, 71 S.W.3d at 744.

Comeaux argues that PJ 23's answers demonstrate his bias. The State contends that PJ 23's answers to the trial court's questions show that PJ 23 could set aside his prejudice and follow the law. And, the State contends that even if the prospective juror's answers do not show that the prospective juror could set aside his bias, Comeaux failed to use all of his strikes on prospective jurors in the "strike zone."[2] By failing to use all of his strikes on jurors in the strike zone, the State concludes that Comeaux failed to use his strikes to prevent any harm which occurred from the trial court's refusing to grant his request for an additional strike.

---

[2]There were thirty-six members of the venire. Given that each party had ten peremptory strikes and that none of the prospective jurors were excused for cause, PJ 32 was the last prospective juror subject to being seated on Comeaux's jury. Comeaux used one of his strikes on PJ 34, a member of the venire who was outside the strike zone.

7

PJ 23's answers do not reflect that he could follow the law he would be given in the charge, as that question was not asked. Additionally, had PJ 23 served on the jury, he would have been instructed not to consider facts not in evidence and not to consider legal principles not contained in the charge. He would also have been instructed not to discuss or consider anything he knew or learned outside the testimony presented in court. However, the record shows that in attempting to rehabilitate PJ 23, the trial court told PJ 23 that he could consider his experiences, stating: "That's stuff that you can take in there and you can consider all that."

When we consider the record and PJ 23's answers as a whole, we conclude that PJ 23 did not represent to the court that he could honestly make a decision in the case based on the evidence and facts of the case alone, that he would commit to putting aside his prior experience if chosen to serve on the jury, or that he would disregard his prior experience and follow the trial court's instructions to do so. *See id*. at 744 (stating that "[t]he test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law"). Because bias was established, and the juror was not rehabilitated, we conclude the trial court erred by failing to grant Comeaux's motion to strike. *See Sosa v. State*, 769 S.W.2d 909, 918-19 (Tex. Crim. App. 1989) (prospective juror's indication that she could not be fair and

impartial due to her views on the death penalty supported the trial court's ruling striking the prospective juror for cause); *see also Vaughn v. State*, 833 S.W.2d 180, 185 (Tex. App.—Dallas 1992, pet. ref'd) (when juror stated unequivocally that she could not be fair and impartial, bias was established as a matter of law). We hold the trial court abused its discretion by denying Comeaux's request to excuse PJ 23 for cause.

To demonstrate that he was harmed by the trial court's denial of his motion to strike and his request for an additional peremptory strike, Comeaux must demonstrate that he exhausted all of his peremptory strikes and asked for more. *See* Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 7 (Tex. Crim. App. 2001) (noting that the defendant must exhaust his peremptory challenges to show harm due to the trial court's erroneous denial of a challenge for cause); *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992) (noting that error arising from the trial court's failure to grant a challenge for cause requires the defendant to show harm by demonstrating that he used a peremptory strike to remove the objectionable potential juror). Although Comeaux used all of his strikes in jury selection, he used one of his strikes on a prospective juror who, because of his placement on the panel of prospective jurors, was not exposed to serving on Comeaux's jury. In this case, we must decide whether the rules of error

9

preservation require that Comeaux show that all of his strikes were used on prospective jurors who were exposed to serving on Comeaux's jury—the prospective jurors in the strike zone.

Generally, attorneys use peremptory strikes to remove potential jurors who are perceived as being potentially biased in an effort to obtain a trial by an impartial jury. However, even "the right to trial by impartial jury, like any other right, is subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy." *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (citing *Delrio v. State*, 840 S.W.2d 443, 445 (Tex. Crim. App. 1992)). The record contains nothing to explain why Comeaux wasted a peremptory strike on a potential juror who was not in the strike zone. And, without diminishing the relative strength of his ten peremptory challenges, Comeaux could have removed PJ 27, the juror he identified as objectionable.

In our opinion, defendants that complete jury selection without using all peremptory strikes and defendants who allow objectionable jurors to remain on the jury because they employ strikes outside the strike zone should be treated in the same manner for purposes of the rules of error preservation. In both situations, the potential juror the party is complaining about on appeal is a potential juror that the party could have chosen to remove from the panel without diminishing the relative

strength of the peremptory challenges allocated to the defendant by statute. Because Comeaux failed to use all ten of his strikes on prospective jurors in the strike zone, we conclude that Comeaux has not shown that he exhausted his peremptory challenges. Consequently, Comeaux's complaint that the trial court refused his request for an additional strike resulting in an objectionable juror being seated on the jury is not preserved for purposes of appellate review. *See* Tex. R. App. P. 44.2(b); *Johnson*, 43 S.W.3d at 7 n.9 (explaining that harmless error can occur even when the procedural steps outlined by the Court are followed in cases involving challenges of jurors for cause). We overrule issue one.

Opening Statement

In issue two, Comeaux complains that the prosecutor improperly mentioned an extraneous crime in opening statement when she mentioned that after attempting to commit a burglary of the residence at issue he went to another residence. As the prosecutor was about to mention that Comeaux committed another burglary at the second residence, Comeaux's attorney lodged an objection to the prosecutor's mentioning "any other alleged criminal activity[,]" and moved for a mistrial. The trial court denied the request.

Article 36.01 of the Code of Criminal Procedure allows the prosecutor to make an opening statement by stating "the nature of the accusation and the facts

11

which are expected to be proved by the State in support thereof." Tex. Code Crim. Proc. Ann. art. 36.01(a)(3) (West 2007). The record reflects that the State introduced evidence during the trial to show that on the same evening Comeaux was attempting to burglarize a garage attached to J.S.'s residence, Comeaux attempted to burglarize B.P.'s garage. The trial court admitted all of B.P.'s testimony about the attempted burglary of his garage without objection.

The prosecutor's comments in opening statement about the attempted burglary that occurred in B.P.'s garage concern a matter on which evidence was later admitted during Comeaux's trial. Comeaux did not complain during trial nor has he complained on appeal that the evidence regarding the extraneous burglary was improperly admitted. When evidence about a matter mentioned in opening is properly admitted in a trial, the prosecutor's mention of the evidence in opening statement is not error. *See Banks v. State,* 643 S.W.2d 129, 133 (Tex. Crim. App. 1982). The trial court did not abuse its discretion by overruling Comeaux's motion for mistrial. We overrule issue two.

Sufficiency of the Evidence

In issue three, Comeaux argues the evidence is insufficient to prove that he attempted to burglarize the habitation where J.S. was living. We review a challenge to the legal sufficiency of the evidence in the light most favorable to the verdict to

determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). In reviewing the evidence from a trial, we do not substitute our judgment for that of the factfinder's; instead, we give deference to the jury to exercise its responsibility to fairly resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Under the charge submitted to the jury in Comeaux's case, the State was required to prove beyond reasonable doubt that Comeaux entered a habitation owned by J.S., without his effective consent, intending to commit a theft. *See* Tex. Penal Code Ann. § 30.02(a)(1). Comeaux argues that "[t]he fact that the [State's] two witnesses were unable to see the perpetrator's face establishes reasonable doubt as to the identity of the perpetrator of the burglary charged against [Comeaux]." Comeaux concludes that the "identity evidence of [Comeaux] as the alleged perpetrator was legally insufficient for the State to prove the element of identity."

In reviewing challenges that concern the sufficiency of evidence, we consider both properly and improperly admitted evidence. *See Clayton v. State*,

13

235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("Our review of 'all of the evidence' includes evidence that was properly and improperly admitted.") (citing *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)). J.S. pointed to Comeaux in the courtroom when asked to identify who he saw in his garage on the evening of March 16, 2010. J.S. also explained that approximately one hour after seeing a person run from his garage, police took him to another location where Comeaux was being detained, and a policeman asked: "Is that him[?]" J.S. stated that he explained to the policeman that he had not gotten a clear look at the person's face; nevertheless, J.S. also told the police that the person they had detained was the individual he had seen in his garage. At trial, J.S. explained that he based his identification of Comeaux on "the clothes that he was wearing and the specific emblem on his jacket." According to J.S., the denim jacket the person in his garage wore had a round emblem of a mountain on the back of the jacket. J.S. also testified that the person he saw and later identified was wearing blue jeans and white sneakers.

B.P., who testified without objection, also identified Comeaux as the person he had seen in his garage around ten o'clock at night on March 16, 2010. Less than an hour later, the police took B.P. to a location where they had detained Comeaux. B.P. identified Comeaux as the person he had seen in his garage that evening. B.P.

14

explained that he identified Comeaux based on Comeaux's clothing, his hairstyle, and because he had been able to see Comeaux in the garage that night from a side profile. B.P. testified that he was confident that the person he identified the night of the burglary was the person who he saw in his garage. Additionally, B.P. identified Comeaux in court as the person that he had seen in his garage on the evening of March 16. Viewed in the light most favorable to the verdict, B.P.'s testimony places Comeaux in the neighborhood on the evening at issue, puts Comeaux in similar if not identical clothing, and establishes that Comeaux had attempted to commit another burglary of a garage that same evening. As such, the testimony provides support for the jury's conclusion that Comeaux was the person that J.S. had seen in his garage. *See Brooks*, 323 S.W.3d at 899.

Sergeant David Odom's testimony offers additional support for the jury's verdict. Sergeant Odom, an employee of the Nederland Police Department, spoke to J.S. approximately twenty minutes after the burglary in his garage occurred. According to Sergeant Odom, J.S. described the person he saw in his garage as "a white male wearing blue jeans and a blue jean jacket[.]" Sergeant Odom began driving around in an effort to locate a person matching J.S.'s description of the burglar. A few minutes later, Sergeant Odom learned that another burglary had been reported in the same neighborhood. According to Sergeant Odom, the two

15

residences involved in the attempted burglaries are approximately nine blocks apart. After learning of the second burglary, Sergeant Odom spoke to B.P., who told him what happened at his residence.

Shortly after speaking to B.P., Sergeant Odom was driving around in the neighborhood where the burglaries had been reported when he saw a red truck pull into the driveway of a residence whose garage door was open. The passenger in the truck, Comeaux, then began walking toward the garage. Sergeant Odom testified that when Comeaux saw his patrol vehicle, he "immediately turned to the right and proceeded up the walkway to the front door." By the time Sergeant Odom turned his car around, Comeaux was getting back into the red truck. When the truck attempted to back out of the driveway, Sergeant Odom "pulled up behind them in the driveway."

After approaching the truck, Sergeant Odom asked the two men what they were doing. The driver told him that he was dropping Comeaux off at his friend, Jason Simino's, house. Comeaux told Sergeant Odom that his friend was Jason Simino, but that "Jason wasn't at home." According to Sergeant Odom, the owner of the residence adjacent to the driveway where the truck was parked stated that he was not Jason Simino and that he did not know Comeaux.

16

Sergeant Odom explained that Comeaux's clothing matched J.S.'s and B.P.'s description of the clothes the suspect was wearing at the time the attempted burglaries occurred, so he detained Comeaux while other officers picked up J.S. and B.P. to determine if they could identify Comeaux. After J.S. and B.P. identified Comeaux, Sergeant Odom placed Comeaux under arrest. Sergeant Odom identified Comeaux in court as the person he saw approaching the open garage of a residence on the evening of March 16. Sergeant Odom's testimony lends support to the jury's conclusion that Comeaux was the person who burglarized J.S.'s and B.P.'s garages on the evening of March 16, 2010.

Although there are conflicts in the testimony, in a legal sufficiency review we are required to defer to the jury's determinations regarding which witnesses were credible and how the jury weighed various parts of the evidence. *See Brooks*, 323 S.W.3d at 899. J.S. identified Comeaux as the person who committed the attempted burglary within approximately one hour of the time the burglary occurred. Comeaux was wearing clothes that the jury could conclude closely matched the clothes being worn by the burglar. B.P.'s testimony identifying Comeaux as the person who burglarized his garage on the same evening and in the same neighborhood also supports the jury's conclusion that Comeaux was the person who burglarized J.S.'s habitation. *See Lane v. State*, 933 S.W.2d 504, 519

(Tex. Crim. App. 1996) (stating that extraneous-offense evidence may be admissible to show identity where extraneous offense is shown to be sufficiently similar to the charged offense by proximity in time and place). Finally, the evidence that Comeaux attempted to mislead police about what he was doing in the area allowed the jury to infer that Comeaux lied to avoid being arrested for the burglaries at issue. *See* Tex. R. Evid. 404(b); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (noting that a defendant's implausible explanations to police are probative of wrongful conduct and are also circumstances of guilt); *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996) (op. on reh'g) (explaining that any extraneous conduct which tends to show consciousness of guilt may be deemed relevant); *Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.— Houston [14th Dist.] 2004, pet. ref'd) (noting that making false statements to police indicates a consciousness of guilt). In measuring the sufficiency of the evidence, "[e]very fact need not point directly and independently to the defendant's guilt." *Conner*, 67 S.W.3d at 197. And, a conclusion that a defendant is guilty "can rest on the combined and cumulative force of all incriminating circumstances." *Id*.

After reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Comeaux burglarized

J.S.'s habitation beyond a reasonable doubt. We hold that the combined cumulative force of all of the incriminating evidence and the incriminating circumstances is legally sufficient evidence that supports the jury's verdict; we overrule Comeaux's third issue.

## Identification Evidence

In issue four, Comeaux argues the showup that the police arranged created suggestive circumstances leading J.S. and B.P. to identify Comeaux as the perpetrator of the burglaries. A showup has been defined as a "pretrial identification procedure in which a suspect is confronted with a witness to or the victim of a crime. Unlike a lineup, a showup is a one-on-one confrontation." BLACK'S LAW DICTIONARY 1506 (9th ed. 2009).

We previously noted that B.P.'s testimony was admitted without objection. In his motion to suppress, Comeaux did not complain about B.P.'s identification of him as the person who B.P. saw in his garage. Because Comeaux failed to object at trial regarding the admission of B.P.'s testimony, his complaint about the admission of that testimony has not been preserved for our review on appeal. *See* Tex. R. App. P. 33.1(a) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request).

19

To address Comeaux's complaint that the trial court improperly allowed J.S. to identify Comeaux in the courtroom as the person who attempted to burglarize his garage, we first evaluate whether the showup procedure at issue was unnecessarily suggestive. *See Perry v. New Hampshire*, 132 S.Ct. 716, 722-23 (2012). The record reflects that police called J.S. around an hour after the attempted burglary of his garage, telling him that they wanted him to come see if a man they had detained was the man he had seen in his garage. When J.S. viewed the man approximately one hour after the attempted burglary occurred, the man was standing and talking to other officers; he was not in handcuffs; and, J.S. denied that police suggested that the man they had was the burglar. When asked if the man being detained was the man that J.S. had seen in his garage, J.S. told the police that while he did not get a clear look at the man's face, he did see the man's clothing. J.S. also testified that he felt confident the man police had detained was the same person he saw attempting to steal something from his garage. J.S. testified that his identification was based on the man's clothing and a specific emblem containing a mountain located on the back of the man's jacket.

There are certainly reasons the jury could have questioned the accuracy of J.S.'s identification. Although the light in the garage was on, J.S. testified that he was startled when he saw a man in his garage, and he stated the man immediately

20

ran out of the garage. Additionally, J.S. identified Comeaux based on his clothing, not his physical features, J.S. did not see Comeaux's face when he was in the garage, and Comeaux was being detained by police when J.S. was asked if the person they had detained was the person he saw in his garage. Nevertheless, while on-scene confrontations between an alleged perpetrator and the victim have a degree of suggestiveness, the credibility of and the weight to be given identification testimony where time is of the essence in catching the suspect are matters that are generally left to juries. *See Fite v. State*, 60 S.W.3d 314, 318 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Here, the evidence tends to suggest the showup procedure was necessary. J.S. was the only witness who could identify or exonerate Comeaux as the person he saw in his garage; the burglary had occurred about an hour earlier that evening, but J.S. had only a brief opportunity to view the perpetrator, limiting the time the police had to use J.S.'s recollection while his memory remained fresh. Additionally, the record does not indicate that Sergeant Odom knew of Comeaux's prior criminal record when he detained Comeaux, so nothing indicates that the officer who arranged the showup knew that police had a mug shot of Comeaux in their possession. And, when police detained Comeaux, they had not yet developed probable cause for his arrest; a brief detention to allow a victim of a crime to view

21

a suspect allows the police to quickly clear an innocent person while only briefly detaining the suspect to investigate a suspected crime. *See Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh'g). Also, there was no evidence introduced in the hearing showing that Sergeant Odom had better alternatives than a showup to further the investigation at issue.

Although a police showup is suggestive, with respect to J.S's identification of Comeaux, nothing suggests that Sergeant Odom or the other police officers involved in handling Comeaux's showup engaged in any improper conduct. *See Perry*, 132 S.Ct. at 726 (noting that in past cases, "the Court has linked the due process check, not to suspicion of eyewitness testimony generally, but only to improper police arrangement of the circumstances surrounding an identification"). In *Perry*, the United States Supreme Court concluded that "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id*. at 728.

Additionally, we note that Comeaux did not obtain a hearing on his motion to suppress J.S.'s testimony, nor did he request that the trial court allow him to take J.S. on voir dire before J.S. identified him in the courtroom. As the party complaining of an in-court identification, Comeaux was required to show by clear

22

and convincing evidence that J.S.'s in-court identification was tainted by an improper pretrial identification procedure.[3] *See Jackson v. State*, 628 S.W.2d 446, 448-49 (Tex. Crim. App. 1982). The record does not show that Comeaux made the necessary showing before the trial court admitted the testimony at issue, nor does it demonstrate that Comeaux met his burden to show that police used a tainted procedure based on the testimony as a whole.

Based on all of the evidence in the record, we conclude that Comeaux has not met his burden to prove that the showup was unnecessarily or impermissibly suggestive. We overrule Comeaux's fourth issue.

---

[3]The record reflects that J.S. was the first witness who testified during the trial; he identified Comeaux in court shortly after explaining that he had seen a man in his garage on the evening of March 16, 2010. At that point, the trial court had not heard any testimony regarding the circumstances surrounding the showup, nor had J.S. testified that he had not seen the suspect's face or that he subsequently identified Comeaux by the clothes that he was wearing. Later, when J.S. explained the basis on which he identified Comeaux, Comeaux did not ask that the trial court strike J.S.'s in-court identification as unreliable. Nevertheless, the State has not suggested that Comeaux was required to do more than file a motion to suppress and object to preserve his complaint. Dix and Schmolesky suggest that in handling suppression issues, trial courts should hear evidence on the issue of admissibility before determining whether the evidence is admissible and before submitting the evidence to the jury. 41 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 18:4 (3d ed. 2011) (discussing the trial court's obligation to independently and definitively resolve a defendant's exclusionary rule objections). Comeaux has not asserted that the trial court, without a request to do so, was required to conduct a pretrial hearing to address the reliability of J.S.'s identification testimony.

23

Speedy Trial

In his fifth issue, Comeaux contends that he was denied his constitutional right to a speedy trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. In determining whether a defendant has been denied this right, the reviewing court balances four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). No single factor is either a necessary or a sufficient condition to justify a finding that a defendant has been deprived of his speedy trial right, and courts must engage in a balancing process in each individual case. *Barker*, 407 U.S. at 530, 533; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). The application of these factors is a legal question that is subject to de novo review. *Johnson*, 954 S.W.2d at 771.

Comeaux's trial began on March 5, 2012, eleven days before the two year anniversary of his arrest. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (noting that length of delay is measured from the time the defendant is arrested or formally accused). Generally, courts have considered delays approaching one year to be "'presumptively prejudicial'" and sufficient to trigger a speedy trial inquiry. *See Doggett v. United States*, 505 U.S. 647, 651-52 & n.1

(1992); *Shaw*, 117 S.W.3d at 889. Consequently, the first *Barker* factor favors Comeaux. *See Zamorano*, 84 S.W.3d at 649.

Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of explaining the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). In Comeaux's case, the State contends that the delay is due to "far too many cases impacting the trial court's docket." But, the record contains no evidence to support that suggestion. The State also contends there "is no indication of bad faith on the part of the State or defense counsel" with respect to the delay at issue. We agree that nothing in the record shows that bad faith contributed to any of the delays in the court's reaching Comeaux's case for trial.

The record before us shows that the trial court reset Comeaux's case nine times between his arrest and his trial. The record does not reflect whether one of the parties requested the court to reset the case, or whether the court reset the case sua sponte. The record shows that three different attorneys were appointed to represent Comeaux before his case was reached for trial. However, the record is silent regarding the reasons that Comeaux changed counsel. With respect to the delay and the absence of explanation for it, this factor weighs against the State. *See Zamorano*, 84 S.W.3d at 649-51. However, there is also no evidence that the State

25

attempted to deliberately delay Comeaux's trial. Therefore, while we weigh the second *Barker* factor against the State, it is given less weight than the remaining three factors in our analysis. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

The third *Barker* factor requires that we determine when the defendant asserted his right to a speedy trial. *Barker*, 407 U.S. at 528-29, 531-32; *see also State v. Munoz*, 991 S.W.2d 818, 825 (Tex. Crim. App. 1999) (placing the burden on the defendant to assert or demand his right to a speedy trial). Comeaux first asserted his right to a speedy trial by filing a writ of habeas corpus on October 3, 2011. The trial court denied the petition on October 4, 2011.[4] As of October 2011, the trial court and the State were aware of Comeaux's complaint that he was not getting a speedy trial. *See Zamorano*, 84 S.W.3d at 651 n.40. Comeaux's attempt to obtain a speedy trial weighs in his favor.

The fourth *Barker* factor is whether the defendant suffered prejudice from the delay. Prejudice is assessed in light of the interests the right to a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration, (2)

---

[4]Comeaux appealed from the trial court's decision denying his writ; we affirmed the order on the ground that Comeaux could not use a pretrial writ to assert his constitutional right to a speedy trial. *See Ex parte Comeaux*, No. 09-11-00566-CR, 2012 Tex. App. LEXIS 396, at *2 (Tex. App.—Beaumont Jan. 18, 2012, no pet.) (mem. op., not designated for publication).

minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. The last of these interests is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Concerning the first interest, preventing oppressive pretrial incarceration, Comeaux's incarceration during the approximate twenty-four months before his case was reached represents a presumptively prejudicial delay under the first *Barker* factor. *See Munoz*, 991 S.W.2d at 821-22. However, the record fails to show that Comeaux's pretrial incarceration was used as an instrument of oppression. The record does not reflect whether Comeaux requested his release on bond, and it does not show that he was denied bond. Without evidence of oppression, we do not consider this interest as one that weighs in favor of finding prejudice.

With respect to the second interest, minimizing anxiety and concern, Comeaux has not argued that the delay caused him "any anxiety or concern beyond the level normally associated with being charged with a felony . . . ." *See Shaw*, 117 S.W.3d at 890. The record is silent regarding whether Comeaux experienced any abnormal level of anxiety or distress due to the delays in reaching his case for

trial. Because Comeaux failed to show that the delay caused him an abnormal level of anxiety or concern, the evidence with respect to this interest does not support a finding that Comeaux was prejudiced.

The third interest requires that we examine whether the delay impaired Comeaux's ability to present a defense. *See Barker*, 407 U.S. at 532. Comeaux has neither shown that he attempted to call witnesses but could not because they were unavailable, nor has he shown that the delays deprived him of evidence that would have been material to his defense. *See Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); *Marquez v. State*, 165 S.W.3d 741, 750 (Tex. App.—San Antonio 2005, pet. ref'd). Additionally, the record does not reflect that Comeaux attempted to subpoena or call witnesses to testify for him during his trial, such as the person who was driving the truck he was in when stopped by Sergeant Odom. With respect to the witnesses who did testify, the record does not suggest that the delay adversely affected their ability to recall what occurred. After weighing all three interests that relate to the fourth *Barker* factor, we conclude that the fourth factor weighs heavily in the State's favor.

Considering all four of the *Barker* factors as a whole, we conclude that Comeaux has failed to establish that the State violated his right to a speedy trial.

28

*See Barker*, 407 U.S. at 533-34. Comeaux's fifth issue is overruled. Having overruled all of Comeaux's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 1, 2013
Opinion Delivered September 18, 2013
Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.