# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-17-00504-CR

---

**Troy Anthony White, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2015-189, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury found appellant Troy Anthony White guilty of three counts of aggravated sexual assault of a child under the age of six for sexually abusing his five-year-old niece. *See* Tex. Penal Code § 22.021(a)(1)(B), (2)(B), (f)(1). Appellant elected to have the trial court decide his punishment, *see* Tex. Code Crim. Proc. art. 37.07, § (2)(b), and the trial judge sentenced him to serve 50 years in the Texas Department of Criminal Justice for each offense, *see* Tex. Penal Code § 22.021(e), (f)(1). On appeal, appellant asserts that his trial counsel rendered ineffective assistance and that the trial court erred in admitting medical reports prepared by a sexual assault nurse examiner. We find no reversible error. However, through our own review of the record, we have found non-reversible error in the written judgments of conviction. We will modify the judgments to correct the error and, as modified, affirm the trial court's judgments of conviction.

# BACKGROUND[1]

After separating from her husband, Sidoney and her five children, three sons and two daughters, lived with her mother in her mother's house along with appellant, Sidoney's adult brother. One morning as Sidoney was driving her children to school, her youngest daughter, L.J., indicated that she was going to tell their mom "Troy's secret."[2] Sidoney asked L.J., "What secret?" The young girl told her that "he lets us suck his wiener." When Sidoney questioned her daughter about where his wiener was, L.J. "pointed to the genital area." Sidoney then asked her oldest daughter, K.J., if it was true. K.J. looked at her mother and nodded her head yes. Sidoney called her mother to inform her about what her daughters had disclosed and then called the police.

Two days later, both girls were taken to a sexual assault nurse examiner (SANE) for a sexual assault exam. During her exam, L.J. told the nurse,

> Me and [K.J.] play with Troy. He makes us suck his penis. Troy put his penis in my butt a bunch of times. Troy comes in my room in the middle of the night and carries me to his room. He makes me lay on my stomach and tells me to be still. He puts his penis in my butt. Sometimes he does it in the daytime, too. Troy tells me I can't tell anyone or I will be in trouble. Sometimes he puts his finger in my butt. He likes to play with my butt.

After conducting the sexual assault exam, the SANE noted that L.J.'s anus "had redness in an irregular shape" at the 7:00 o'clock position and observed that L.J. had anal dilation in less than

---

[1] To protect the identities of the child victims in this case, we refer to the children using only their initials and refer to their mother, who shares the children's last name, by her first name. *See* Tex. R. App. P. 9.10(a)(3).

[2] According to Sidoney's testimony, L.J. was upset because her family was discussing what had happened the night before after L.J. had to go to bed (when she had wanted to stay up). The young girl said to her sister, "[Y]ou better shut up, [K.J.], or else I'm going to tell Mom Troy's secret."

20 seconds. At trial, the nurse explained that it usually it takes 30 seconds for the anus to relax when a child is relaxed and that if the anus relaxes before 30 seconds, it can be indicative of having either a medical condition or having been abused. A copy of the SANE report of L.J.'s exam was admitted at trial over appellant's hearsay objection.

During K.J.'s sexual assault exam, she told the SANE,

> My uncle touches me on my butt. He puts his wiener in my butt. He does it a bunch of times. Troy comes in the room every night in his underwear. He takes his underwear off and gets in bed with me. He makes me hold his wiener with my hand and he makes me suck his wiener. Troy does it sometimes in the daytime, too. Troy tells me if I tell, I will get in trouble. We are stay[ing] in a hotel, so he has not done it in a few days.

The nurse noted that the young girl "had an irregular shaped opening of the anus" and her anal dilatation was less than 20 seconds. A copy of the SANE report of K.J.'s exam was admitted at trial over appellant's various objections.

The day after the sexual assault exams, both girls were taken to the Children's Advocacy Center for forensic interviews. The detective assigned to the case observed the interviews. At trial, he testified that both girls made outcries of sexual abuse, identifying appellant as the perpetrator.

Several days later, the detective spoke with appellant at his home. During trial, over appellant's objection, an audio recording of the conversation was admitted into evidence.[3] On the recording, appellant initially denied having any sexual contact with the girls. He then described L.J. touching his penis on one occasion and her pulling his pants down on another. He also admitted that K.J. had touched his penis with her hand—"playing with it for 15 minutes"—

_____

[3] Appellant objected to the admission of the recording because "it was improper to take the statement from him without advising him of his constitutional rights."

and then admitted that he took his penis out and "laid it there" and "let it happen." But, appellant denied that the girls had any oral contact with his penis.

Three days after the interviews, the detective obtained a warrant for appellant's arrest. After appellant was arrested, the detective interviewed appellant at the sheriff's office. Before this interview, which was recorded on video, the detective gave appellant his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (holding that prior to custodial interrogation, law enforcement officers must admonish accused of certain constitutionally protected rights to secure privilege against self-incrimination). During this interview, appellant admitted that he "allowed" the girls to put his penis in their mouths but said that he did not remember "doing anything else." He described an instance where he put his penis in L.J.'s mouth, explaining that he asked the young girl to put it in her mouth, but she complained that it "tasted nasty," so he offered to wash it. Ultimately, appellant admitted putting his penis in both girls' mouths, at one point saying that he "felt like [he] was forcing them to put their mouths on [him]." He also admitted to the detective that he told the girls to "keep it to themselves" and "to keep this all secret." Appellant, however, denied touching either girl near her anus or vagina. At several points during the interview, appellant said that he wanted to take a test "to prove that he did not do that," and, at the end of the interview, the detective agreed to arrange for him to take a polygraph test.

Appellant was subsequently indicted with three counts of aggravated sexual assault of a child younger than six years of age for the sexual abuse perpetrated against L.J.[4] Count I charged appellant with penetrating or contacting L.J.'s mouth with his penis, *see* Tex.

---

[4] The record reflects that appellant was indicted in another case for the sexual abuse he allegedly perpetrated against K.J.

4

Penal Code § 22.021(a)(1)(B)(ii), (v); Count II charged appellant with penetrating or contacting L.J.'s anus with his penis, *see id.* § 22.021(a)(1)(B)(i), (iv); and Count III charged appellant with digital penetration of L.J.'s anus, *see id.* § 22.021(a)(1)(B)(i). The State called five witnesses at trial: the lead detective, who testified about his investigation and his interviews with appellant; the sexual assault nurse examiner, who testified about the exams she performed on both girls; Sidoney, who testified about L.J.'s outcry disclosing the sexual abuse; and L.J. and K.J., who both described appellant's sexual abuse of them.[5] As the sole witness for the defense, appellant recalled Sidoney.

The jury found appellant guilty of all three counts. Because appellant elected to have the trial court determine his punishment, the court ordered a pre-sentence investigation and reset the case for sentencing. At the punishment hearing, a family friend testified on behalf of appellant—explaining that he was "absolutely surprised" by appellant's conduct and expressing "[his] hope that the person [he] knew, if given that chance, can again surface -- surface and he can be very productive to society and be a changed person"—and appellant testified on his own behalf. During appellant's testimony, the State offered evidence reflecting that two weeks before sentencing, appellant used his commissary money, part of which his mother gave to him, to order pornographic magazines. In closing argument to the court, appellant asked for the minimum

---

[5] L.J., eight years old at the time of trial, told the jury that her Uncle Troy "made us suck his private and he would stick it in our butt." She explained that "us" was her and her older sister. She said that it happened in her uncle's room in her grandmother's house. L.J. did not remember how many times it happened but indicated that it happened "a lot." She testified that she knew that appellant did the same thing to her older sister because she saw him do it to her.

K.J., who turned ten years old the day before she testified at trial, said that she had a problem with her Uncle Troy, which was that "[h]e was doing child abuse." She explained that appellant "made [her] suck his wiener." Like her sister, K.J. said that she did not remember how many times it happened but indicated that it happened "a lot of times" during both the day and the night.

sentence of 25 years; the State sought a life sentence. After expressing its understanding that appellant is not eligible for parole for his convictions for these offenses, *see* Tex. Gov't Code § 508.145(a), the trial court sentenced appellant to serve 50 years in prison for each count and ordered the sentences to be served concurrently, *see* Tex. Penal Code § 3.03(b)(2).

## DISCUSSION

Appellant raises two points of error. First, he claims that he suffered ineffective assistance of counsel at trial. Second, he challenges the trial court's admission of the medical reports completed by the sexual assault nurse examiner in connection with the sexual assault exams of the girls.

### Ineffective Assistance of Counsel

In his first point of error, appellant contends that his trial counsel rendered ineffective assistance at trial because counsel failed to: (1) request a hearing pursuant to article 38.37 relating to the admission of evidence of extraneous sexual offenses, (2) object to the prosecutor's opening statement that referenced extraneous sexual offenses, and (3) object to evidence relating to appellant taking a polygraph.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava*, 415 S.W.3d at 307. The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—

6

that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

In this case, appellant did not file a motion for new trial. Thus, the record is silent as to the reasons underlying trial counsel's conduct.

Appellant's first two claims of deficient performance by trial counsel relate to evidence of appellant's sexual abuse of K.J. Under section 2(b) of article 38.37 of the Code of Criminal Procedure, evidence that the defendant has committed one of the child sexual abuse offenses described by the statute against a child other than the victim of the charged offense is admissible "for any bearing the evidence has on relevant matters, including the character of the

7

defendant and acts performed in conformity with that character." Tex. Code Crim. Proc. art. 38.37, § 2(a)(1), (b). Before admitting such evidence, a trial court must conduct a hearing out of the presence of the jury to determine whether the evidence likely to be admitted at trial concerning the separate sexual abuse offense will be adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. *Id.* art. 38.37, § 2-a.

Appellant first contends that trial counsel's performance was deficient because he failed to request a hearing prior to the admission of evidence of appellant's sexual abuse of K.J. The record reflects that when the prosecutor began to question the SANE about the sexual assault exam she conducted on K.J., appellant objected "to [that] line of questioning with respect to K.J. since that is not the subject of this particular indictment." The prosecutor responded that evidence of the sexual abuse of another child is admissible under article 38.37 and pointed out that "[t]here's already been an admission of that on the videotape."[6] Appellant's counsel told the court that "if you'd allow us to, we could probably handle the issues that I've raised on the admissibility [of the SANE report related to L.J.'s exam] outside the presence of the jury while -- and add this issue as well." The judge responded, "38.37, I believe I'm required to have that hearing outside the presence of the jury" and removed the jury from the courtroom.

Outside the presence of the jury, the court established that appellant had received the requisite notice under the statute. *See id.* art. 38.37, § 3. The court then observed that "[t]here doesn't really appear to be any limitation, [defense counsel], about the type of evidence regarding a separate offense" and noted that "there is certain evidence already in the record in that regard." The court then reviewed the SANE reports for the exams conducted on both girls,

---

[6] At that point in the trial, the detective had already testified, and the audio and video recordings of his interviews with appellant had been admitted.

and the SANE summarized what her testimony about K.J.'s exam would be.  The trial court then made the requisite finding, *see id.* art. 38.37, § 2-a(1), and overruled appellant's objection.

We observe several things about appellant's first claim of deficient performance. First, under the statute, a hearing outside the presence of the jury before the admission of the evidence of an extraneous sexual offense is mandatory, not dependent upon any request by defense counsel.  Second, appellant did, in fact, request a hearing outside the presence of the jury to address his objection to the admission of the SANE's testimony relating to K.J.  Third, the trial court conducted a hearing outside the presence of the jury as mandated by the statute. However, as both the prosecutor and the court noted, evidence of appellant's extraneous sexual abuse of K.J.—appellant's admissions to the detective that K.J. "play[ed] with his penis" and that he "allowed" K.J. to put his penis in her mouth—had already been admitted on the recordings of the detective's interviews with appellant.  Arguably, appellant's trial counsel erred in failing to ensure that the requisite hearing occurred in a timely manner—that is, before any evidence of the extraneous sexual offenses was admitted—but, ultimately, appellant received the hearing, and the trial court made the relevant findings, per the statute.

In a related claim, appellant asserts that his trial counsel's performance was deficient because he failed to object to the portions of the prosecutor's opening statement that referenced appellant's sexual abuse of K.J.  However, the State's opening statement in a criminal case is an outline of facts which the prosecution in good faith expects to prove.  *Fisher v. State*, 220 S.W.3d 599, 603 (Tex. App.—Texarkana 2007, no pet.); *Ketchum v. State*, 199 S.W.3d 581, 597 (Tex. App.—Corpus Christi 2006, pet. ref'd); *see Opening Statement*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("At the outset of a trial, an advocate's statement giving the fact-finder a preview of the case and of the evidence to be presented.").  The State has the statutory

9

right to tell the jury the nature of the accusations against the defendant and the facts that are expected to be proven. *See* Tex. Code Crim. Proc. art. 36.01(a)(3). Here, the prosecutor's comments, which did include references to appellant's extraneous sexual offenses against K.J., simply outlined the anticipated evidence and facts to be proved. "When evidence about a matter mentioned in opening is properly admitted in a trial, the prosecutor's mention of the evidence in opening statement is not error." *Comeaux v. State*, 413 S.W.3d 176, 185 (Tex. App.—Beaumont 2013), *aff'd*, 445 S.W.3d 745 (Tex. Crim. App. 2014); *see Banks v. State*, 643 S.W.2d 129, 133 (Tex. Crim. App. 1982) ("The [State's] opening remarks about evidence which was thereafter properly admitted did not constitute error."); *cf. Matamoros v. State*, 901 S.W.2d 470, 475 (Tex. Crim. App. 1995) ("It is not error for a prosecutor to tell the jury in opening statement what he expects to prove, even if he does not later offer such proof at trial." (citing *Marini v. State*, 593 S.W.2d 709, 715 (Tex. Crim. App. 1980))).

We do not find that counsel acted below any reasonable level of professionalism by failing to object to the prosecutor's opening statement. First, as noted above, the complained-of remarks outlined the State's anticipated evidence. Further, as the trial court ultimately concluded, the evidence of appellant's extraneous sexual abuse of K.J. was admissible under article 38.37. Therefore, trial counsel might have reasonably concluded that, because the evidence was admissible, references to it during opening statement were not objectionable. Moreover, even if trial counsel believed such comments were objectionable, there are possible reasons why counsel may have decided not to object, including wanting to avoid appearing as though he was attempting to hide evidence that would eventually be presented to the jury. In the absence of anything in the record to show the tactics or strategic reasoning of counsel, we cannot conclude counsel's performance was deficient in this instance.

Appellant's final allegation of deficient performance involves trial counsel's failure to object to evidence regarding appellant's failure to take a polygraph examination. The record reflects that evidence concerning a polygraph first arose in the audio recording of appellant's interview at his house when appellant asked the detective if there was "a test" he could take. They then discussed the possibility of appellant taking a polygraph test. At the end of the conversation, appellant again brought up taking a polygraph test and asked the detective if he was going to set one up for him. The detective agreed to do so. The subsequently admitted video recording of the detective's interview with appellant after his arrest presented further evidence concerning the polygraph. At the beginning of the interview, appellant asked the detective if he was ever going to get a polygraph. At the end of the interview, appellant and the detective again discussed appellant taking a polygraph, and the detective explained that he would have to contact a polygraph examiner to schedule it. After both recordings were played for the jury, the prosecutor asked the detective about further actions he had taken in the case. The detective related that he had contacted a DPS agent to schedule the polygraph. He then explained that, ultimately, appellant chose not to take the polygraph because his lawyer advised him not to.

"It has long been the rule in this state that references to a polygraph test, or to its results, are inadmissible for all purposes." *Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim. App. 2008); *see Nesbit v. State*, 227 S.W.3d 64, 66 (Tex. Crim. App. 2007) ("Neither the results of a polygraph test nor the 'fact' of failing a polygraph test are admissible in a Texas criminal proceeding."). "Regardless of whether the case involves the results of a polygraph test or a defendant's willingness to take a polygraph test, evidence of either will result in the same problem: the fact finder will speculate about its outcome or a witness or defendant's position will

11

be bolstered." *Ex parte Huddlestun*, 505 S.W.3d 646, 664 (Tex. App.—Texarkana 2016, pet. ref'd). Therefore, it is generally error to allow the introduction of evidence of polygraph results or a defendant's willingness to submit to a polygraph. *Requena-Castaneda v. State*, No. 10-17-00125-CR, 2018 WL 4925774, at *4 (Tex. App.—Waco Oct. 10, 2018, no pet.) (mem. op., not designated for publication) (citing *Tennard v. State*, 802 S.W.2d 678, 684 (Tex. Crim. App. 1990)); *Martinez v. State*, No. 08-14-00242-CR, 2018 WL 2328242, at *2 (Tex. App.—El Paso May 23, 2018) (not designated for publication), *cert. denied*, 139 S. Ct. 1196 (2019).

However, allowing the introduction of polygraph evidence does not constitute deficient performance by trial counsel as a matter of law. *Ex parte Bryant*, 448 S.W.3d 29, 40 (Tex. Crim. App. 2014); *see Martines v. State*, 371 S.W.3d 232, 250 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("The mere mention of a polygraph examination does not, however, automatically constitute reversible error, even if the results of the exam are revealed."). Instead, the Court of Criminal Appeals has recognized that, "although the introduction of polygraph evidence almost always falls below an objective standard of reasonableness because most attorneys will have no reasonable strategy in allowing the introduction of such evidence, [appellate courts] cannot categorically exclude the possibility that a trial attorney, under certain circumstances, could use the admission of polygraph evidence to his client's favor." *Bryant*, 448 S.W.3d at 40.

Here, the record is devoid of any information about trial counsel's reason for allowing the introduction of the complained-of polygraph evidence. Thus, we cannot discern what counsel's strategy was or whether it was a reasonable strategy under these circumstances—that is, whether it was reasonable to attempt to use the admission of the evidence to somehow

benefit appellant. Appellant's arguments in his brief would have us apply the categorical rule that the Court of Criminal Appeals has rejected. *See Bryant*, 448 S.W.3d at 40. We decline to do so, particularly on the limited record in this case. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) ("[T]he fact remains that the appellate record is still silent as to *why* trial counsel failed to so object. Therefore, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable."); *see, e.g.*, *Shaw v. State*, No. 03-08-00506-CR, 2009 WL 1896068, at *13 (Tex. App.—Austin July 3, 2009, no pet.) (mem. op., not designated for publication) (concluding that appellant failed to overcome presumption that attorney's conduct was reasonable professional assistance where record was silent as to why trial counsel failed to take complained-of certain action).

The record before this Court is not sufficiently developed to allow us to evaluate the purported failures of trial counsel to act because "[n]either [his] counsel nor the State have been given an opportunity to respond to" the claims of ineffectiveness. *See Menefield*, 363 S.W.3d at 593. Appellant's trial attorney was not afforded an opportunity to explain his reasons for the complained-of conduct. The record is silent as to whether there were strategic reasons for counsel's conduct or what the particular strategies were. Appellant's assertion that there was no conceivable trial strategy for the alleged failures is mere speculation. Such speculation does not constitute a demonstration, founded in the record, that no reasonable trial strategy existed. *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("[C]ounsel's alleged deficiency must be affirmatively demonstrated in the trial record."); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) ("[C]ounsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation.").

13

Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd); *see also Lopez*, 343 S.W.3d at 143. Appellant has failed to rebut the strong presumption of reasonable assistance because without explanation for trial counsel's decisions, the complained-of conduct does not compel a conclusion that his performance was deficient. We cannot say that "no reasonable trial strategy could justify" or explain his decision to engage in the complained-of conduct. *See Lopez*, 343 S.W.3d at 143. Nor can we conclude that his conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592; *see also Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel.").

Furthermore, the right to effective assistance is not a guarantee of errorless or perfect assistance. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Cox v. State*, No. 03-12-00751-CR, 2014 WL 4362952, at *2 (Tex. App.—Austin Aug. 26, 2014, no pet.) (mem. op., not designated for publication); *see Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("an accused is not entitled to representation that is wholly errorless"); *Lopez*, 343 S.W.3d at 142 ("the right does not provide a right to errorless counsel"). Even if an appellant shows that particular errors of counsel were unreasonable, he must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693–95; *Villalobos v. State*, No. 03-13-00687-CR, 2015 WL 5118369, at *2 (Tex. App.—Austin Aug. 26, 2015, pet. ref'd) (mem. op., not designated for publication); *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.); *see Strickland*, 466 U.S. at 691 ("An error by counsel, even if

14

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). It is not sufficient that a defendant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were of questionable competence. *Lopez*, 343 S.W.3d at 142–43. Further, merely showing that the errors had some conceivable effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). Instead, he must prove that counsel's errors, judged by the totality of the representation—not by isolated instances of error or by a portion of the trial—denied him a fair trial. *Strickland*, 466 U.S. at 695.

In his argument regarding prejudice resulting from counsel's failure to object to the State's opening statement and failure to request an article 38.37 hearing, appellant argues

> Nothing could have harmed the Appellant more than evidence that he had perpetrated acts against another child. To simply allow the State to present such evidence without ever exercising the Appellant's statutory right to a hearing violates his most fundamental Constitutional right to a fair trial. Failure of his trial attorney to timely file the motions in limine, to object to the State's presentation of such extraneous act evidence, or to make a request for a motion for new trial caused Appellant profound harm, in that it ensured that the jury would hear this evidence no matter what—beginning with opening statement.

However, as we noted, the trial court ultimately conducted the requisite article 38.37 hearing. *See* Tex. Code Crim. Proc. art. 38.37, § 2-a(2). Further, the record supports the trial court's determination that the evidence of appellant's sexual abuse of K.J. would be adequate to support a jury finding that appellant had committed the separate sexual offenses beyond a reasonable doubt. *See id.* art. 38.37, § 2-a(1). Thus, the evidence was properly admitted under article 38.37, and, it logically follows, that the trial court would have deemed it admissible—and admitted it— even had the trial court made its determination earlier or if counsel had objected to the

challenged comments in the State's opening statement. The prosecutor anticipated the admission of the evidence in the State's opening statement, and the anticipation was borne out. Arguably, any prejudicial effect of the remarks was eliminated by the admission of the evidence. *See Hullaby v. State*, 911 S.W.2d 921, 928 (Tex. App.—Fort Worth 1995, pet. ref'd) (observing that once objectionable evidence is presented to jury, "it removes any error there may have been in the making of the opening statement" that referred to such evidence). Appellant has not demonstrated that, but for counsel's failure to request the hearing earlier or failure to object to the prosecutor's comments, the outcome of the trial would have been different.

Concerning counsel's failure to object to the polygraph evidence, appellant argues that the "result of this exchange in front of the jury . . . was to impress upon [the jury] the guilt of the Appellant in a way that was so highly prejudicial that he could not overcome it." He maintains, "There was nothing before the jury other than the Appellant's refusal to take the [polygraph] test, giving the clear impression that he did so because he was guilty. The substantial harm to the Appellant was absolute and completely uncured, unaddressed by his counsel or the court in any way." However, the evidence reflects that it was appellant who initially sought and then continued to pursue taking a polygraph examination during the investigation. The evidence further reflects that, once the polygraph was scheduled, appellant was undecided about taking it until he ultimately declined to do so upon the advice of counsel. We are not persuaded that desiring to take a polygraph, discussions about scheduling it, or the ultimate decision not to take it—which the record explicitly reflects was a decision made on the advice of his counsel—necessarily conveyed the "clear impression" that appellant "refused" to take a polygraph "because he was guilty."

16

Given the record here, appellant has failed to show that trial counsel's failures to object—to the prosecutor's opening statement, to the court's failure to timely conduct the requisite article 38.37 hearing, or to the polygraph evidence—actually had an adverse effect on the defense. *See Strickland*, 466 U.S. at 693–95. The record contains ample evidence that appellant engaged in the alleged sexual acts with L.J.—including appellant's admissions that he penetrated the child's mouth with his penis, L.J.'s testimony describing appellant penetrating her mouth and anus with his penis, L.J.'s outcry to her mother disclosing that appellant made her perform oral sex on him, L.J.'s statements to the SANE indicating that appellant penetrated her anus with his penis and finger, and medical evidence that corroborated L.J.'s account of appellant penetrating her anus. Moreover, we must look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias*, 450 S.W.3d at 136; *see Martinez*, 330 S.W.3d at 901 ("The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias." (citing *Strickland*, 466 U.S. at 690)).

Before trial, appellant's trial counsel filed several pretrial motions, including a request for disclosure of the State's expert witnesses, a motion seeking to suppress L.J.'s statements to the SANE, and several motions for continuance in order to obtain a sex offender risk assessment. During voir dire, trial counsel questioned the members of the jury panel regarding their ability to serve on the jury. Counsel explained the function of the jury, including evaluating witness credibility generally and assessing the credibility of police officers and children in particular. Counsel questioned the venire about prior investigative experience, medical experience, and experience dealing with sexually abused children. Counsel also discussed the notion of false accusations and the legal concept of proof "beyond a reasonable

17

doubt." At the end of jury selection, counsel successfully removed disqualified panel members by agreeing with several of the State's challenges for cause and, the record indicates, counsel proficiently exercised peremptory challenges against panel members potentially unfavorable to the defense.

Further, the record shows that, throughout trial, counsel ably presented and developed the defense theories, which involved attacking the credibility of L.J. and her sister, challenging the police investigation, contesting the medical evidence, and presenting an alternative explanation for the girls' sexual knowledge. In support of these defenses, trial counsel, through cross examination of the State's witnesses, emphasized the weaknesses in the State's case; emphasized the flawed police investigation, highlighting the biased and incomplete nature of the detective's investigation and criticizing the detective's investigative protocol and interrogation techniques; challenged the SANE's medical opinion and suggested alternative causes for the corroborating medical evidence; stressed the lack of corroborating evidence in the form of behavioral signs of abuse or other indications of trauma; and presented evidence of an alternative source for the girls' sexual knowledge—the pornography on appellant's cell phone that the girls had access to. Counsel also attempted to minimize appellant's incriminating statements to the detective, observing that appellant only admitted to part of the alleged criminal conduct.

During closing argument, trial counsel discussed the State's failure to meet its burden of proof; the weakness of the medical evidence; the plausibility of an alternate source for the girls' sexual knowledge; the limited nature of appellant's incriminating statements; and the bias and credibility (or lack thereof) of the State's witnesses, including the inconsistencies and inaccuracies in the girls' trial testimony and prior statements. The fact that trial counsel's

18

strategies ultimately proved unsuccessful—or that appellate counsel disagrees with them—does not render trial counsel's assistance ineffective.

Finally, during the punishment phase, trial counsel presented favorable character evidence as well as mitigating evidence, including appellant's lack of a prior criminal history. Though appellant did not receive the minimum sentence requested, counsel successfully obtained a lesser sentence than the State's recommendation.

On the record before us, we conclude that appellant has failed to demonstrate constitutionally deficient performance on the part of his trial counsel or that he suffered prejudice because of the alleged errors of counsel. Thus, he has not shown himself entitled to reversal based on ineffective assistance of counsel. We overrule appellant's first point of error.

**Admission of SANE Reports**

During the SANE's testimony at trial, the State offered the nurse's reports relating to the sexual assault exams conducted on the girls. When the State offered State's Exhibit #6, the SANE report for L.J.'s exam, appellant's counsel expressed that he "under[stood] the medical diagnosis exception" but objected "on the basis that it contains other aspects of hearsay" and complained that "because the witness has already testified to receiving other information from other sources, it's undocumented and actually has hearsay within hearsay." The following exchange ensued:

| TRIAL COURT: | Why don't we wait until the next break and then we can point those things out possibly or if you think you need to ask some questions regarding the source of that information. I don't know. I haven't seen it. I don't know precisely what -- |
|---|---|
| COUNSEL: | Right. |

19

| TRIAL COURT: | -- contents you may be referring to that might be hearsay. |
|---|---|
| COUNSEL: | Particularly with respect to medical history of the child, that is coming from another source that -- |
| TRIAL COURT: | Well, I'm saying I'll have to look at them. But if you think there are some questions, then I'll allow you to take her on voir dire or we could do that possibly at a break, too. |
| COUNSEL: | We can do that. |
| TRIAL COURT: | Okay. I'll just hold off on the admission at this time. |

The prosecutor then began questioning the nurse about the sexual assault exam that she conducted on K.J. Appellant's counsel objected to the admission of the extraneous sexual offense evidence. The trial court then conducted the requisite hearing pursuant to article 38.37. After the court made its ruling regarding the admissibility of the extraneous sexual offense evidence under article 38.37, the court asked defense counsel, "But as to the admissibility of that exhibit that's been marked regarding L.J.'s exam report, you had some other concerns?" Counsel indicated that he did and questioned the nurse about her reports:

Q.   All right. [Sexual Assault Nurse Examiner], so you indicate that you received the medical history from the mother for both children; correct?

A.   That's correct.

Q.   And that would have been contained, which -- which do you have in front of you right now?

A.   I -- the -- the history that I obtained from her is on page six of ten.

Q.   Are you talking about [L.J.] or ]K.J.]'s?

A.   I'm looking at [L.J.]'s.

Q.   [L.J.]'s. All right?

A.    I can look at [K.J.]'s, too, if you would like me to.

Q.    No. No. That's -- let's focus on one at a time because we've already got that one to work with. And specifically, if you'll -- let's go to your page, I guess, six or page seven of ten, the step two, the body surface diagram descriptions.

A discussion concerning the nurse's finding of "redness with irregular shaping" reflected on the anus depiction on the body diagram followed, which included questions about literature on anal assault and information obtained from L.J.'s mother concerning constipation issues. During the questioning, counsel referenced two pages of the report: one of the body-diagram pages and one of the pages containing medical history questions. Counsel also referred to another page of the report, asking the nurse about the written comments on that page:

Q.    Okay. Now with respect to your report on [K.J.] -- and by the way -- excuse me, before I move to [K.J.]'s, on your page two of ten on [L.J.]'s, Mother indicates to you, at least according to your report, that -- there is quotation marks as to what [L.J.] said. In your sexual history given by [L.J.], what [L.J.] is reporting to have said in quotation marks is he makes us suck his penis.

A.    Well, that's part of it.

Q.    Yes. Mother reports, he makes me and [K.J.] suck his wiener. Your report indicates -- is your sexual history given by [L.J.] a verbatim report?

A.    It is verbatim as much as possible. And it's -- it's not unusual for a child to use two different names for a body part.

Counsel then questioned the nurse about the body diagram in the SANE report of K.J.'s exam. They discuss the nurse's finding of discoloration marks on various parts of K.J.'s body, which were related to a hereditary skin condition. The SANE indicated that she was not familiar with the condition at the time but had since researched it. Counsel also asked about the finding of an

21

"irregularly shaped opening" of K.J.'s anus, referring the nurse to the page of the body diagram with the anus depiction.

After counsel finished questioning the nurse, the following exchange occurred between the trial court and appellant's counsel:

| TRIAL COURT: | But all of the information that you were concerned about in the exhibit that's been marked currently about history,[7] as I'm understanding it, either came from the child or the mother? |
| --- | --- |
| COUNSEL: | Yes, sir. That's what I understand. |
| TRIAL COURT: | And it's all for the purposes of just medical history, diagnosis, prognosis? |
| COUNSEL: | Right. |
| TRIAL COURT: | The objection is overruled and it's admitted. |

Subsequently, when the State offered the SANE report for K.J.'s SANE exam, State's Exhibit #7, appellant objected as follows:

Renew the former objections, Your Honor, as to -- as to not only the hearsay within hearsay, but also under Rules 404 and 405(b). Rules of evidence in 403 run the risk of -- probative value is not -- the prejudicial value outweighs the probative value and -- as well as the confusion of the issues before the jury with respect to the indicted case that we are here on.

The trial court overruled the objections and admitted the exhibit.

In his second point of error, appellant argues that the trial court erred in admitting the SANE reports, raising several claims. Concerning both exhibits, he asserts that the reports

---

[7] The record reflects that the marked exhibit in question was State's Exhibit #6, the SANE report related to L.J.'s exam.

contained inadmissible hearsay and "significant portions of information that were extraneous and not offered for the purpose of medical diagnosis or treatment." Concerning State's Exhibit #7, he further complains that the trial court failed to conduct a Rule 403 balancing test.

We must first address whether appellant properly preserved error, if any, in the court below concerning the various complaints he now raises on appeal. *See Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012); *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). We conclude that, as to some of the complaints raised in his second point of error, he did not.

To preserve error for appellate review, a party must timely object and state the grounds for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). While no "magic words" or citation to specific statutes or rules is required to preserve a complaint for appeal, a party must convey the substance of the complaint to the trial court clearly enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error. *Ex parte Marascio*, 471 S.W.3d 832, 842 (Tex. Crim. App. 2015); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). The record must make it clear that both the trial court and the opposing party understood the legal basis for the complaint. *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013); *see Pena*, 353 S.W.3d at 807. Further, the complaint on appeal must comport with the specific objection made at trial or error has not been preserved. *Thomas*, 505 S.W.3d at 924;

*Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); *see also Yazdchi*, 428 S.W.3d at 844.

In addition, when an exhibit contains both admissible and inadmissible material, the objection to the exhibit must specifically refer to the challenged material to apprise the trial court of the exact objection. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995); *Human v. State*, 749 S.W.2d 832, 838 (Tex. Crim. App. 1988); *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985); s*ee* George E. Dix & John M. Schmolesky, 43A Texas Practice: Criminal Practice and Procedure § 53:74, at 1049 (3d ed. 2011) ("If a unit of evidence—such as an exhibit—contains both admissible and inadmissible parts, an objection to the inadmissible portion must specifically refer to that part or portion of the evidence."). A trial court is not obligated to search through an exhibit and segregate the admissible evidence from the inadmissible. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), *overruled on other grounds by Maxwell v. State*, 48 S.W.3d 196, 198 (Tex. Crim. App. 2001). If the objecting party does not specify which part of the exhibit is not admissible, any asserted error in admitting the evidence is not preserved for review. *Whitaker*, 286 S.W.3d at 369; *Sonnier*, 913 S.W.2d at 518; *Human*, 749 S.W.2d at 838; *Brown*, 692 S.W.2d at 501; *Wintters v. State*, 616 S.W.2d 197, 202 (Tex. Crim. App. 1981); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g).

At trial, appellant objected to both exhibits claiming that the SANE reports contained hearsay within hearsay, although counsel conceded that the reports—including the mother's and the child's statements to the nurse—fell within the hearsay exception for medical

diagnosis or treatment.[8] The objection indicated that, beyond the applicable medical diagnosis or treatment exception, portions of the exhibit were still inadmissible hearsay within hearsay. However, appellant did not specifically identify any particular statements in either report that were, according to appellant, inadmissible hearsay within hearsay. Although he reviewed various portions of the reports during his voir dire of the nurse, he never directed the trial court to the specific portions of the reports that he maintained were inadmissible. At no time—either at trial or on appeal—has appellant specifically identified the objectionable portions of the SANE reports that appellant maintains were hearsay within hearsay. *See Hernandez*, 599 S.W.2d at 617 ("While it might be conceded that appellant's objection sufficiently stated *grounds* for the objection, it did not identify what was objected to."); *see also Barnes v. State*, 876 S.W.2d 316, 329 (Tex. Crim. App. 1994) ("The trial court was not required, in the face of a global hearsay objection, to cull through the [exhibit] and exclude whatever particular matters he may find there that meet that description."). Consequently, appellant failed to preserve error, if any, in the trial court's admission of the challenged exhibits over his hearsay within hearsay objection. *See* Tex. R. App. P. 33.1(a); *see, e.g.*, *Whitaker*, 286 S.W.3d at 369 (holding trial objections were insufficient to preserve error in admission of portions of audiotapes because objections did not specifically point out which portions of tapes were allegedly inadmissible); *Rosales v. State*, No. 03-15-00735-CR, 2017 WL 5247497, at *4 (Tex. App.— Austin Nov. 10, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant failed to preserve error concerning admission of exhibit containing handwritten notes

---

[8] When asserting his hearsay-within-hearsay objection to State's Exhibit #6, appellant's counsel expressed that he "under[stood] the medical diagnosis exception." Subsequently, after questioning the SANE on voir dire, he agreed with the trial court that the information that "[he was] concerned about" "either came from the child or the mother" and was "all for the purposes of just medical history, diagnosis, prognosis."

of counseling sessions because appellant made global hearsay objection to entire exhibit without specifying statements that he found to be objectionable); *Wilkinson v. State*, 523 S.W.3d 818, 826–27 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (concluding that appellant failed to preserve hearsay complaint for appellate review because he objected to entire exhibit containing Facebook posts and "did not highlight specific objectionable statements for the trial court").

Regarding his contention that the exhibits were inadmissible because portions of the exhibits contained information, statements, or extraneous acts that "should not have been admitted because they did not meet the hearsay exception[] for medical diagnosis or treatment under Rule 803(4)," s*ee* Tex. R. Evid. 803(4)(A) (establishing hearsay exception for statement that "is made for—and is reasonably pertinent to—medical diagnosis or treatment"); *Taylor v. State*, 268 S.W.3d 571, 590–91 (Tex. Crim. App. 2008) (discussing pertinence component of medical diagnosis or treatment exception), the record reflects that this complaint is not preserved for appellate review for several reasons. First, appellant did not object on this ground at trial. At no point during trial did appellant assert that the exhibits, or any portion thereof, were not admissible because the SANE reports, or portions therein, did not meet the medical diagnosis or treatment hearsay exception. In fact, as we noted previously, the record reflects that counsel agreed that the medical diagnosis or treatment exception applied. Second, because appellant failed to object on this ground at trial, he also failed to specify any particular statements in either report that were, as he now contends, inadmissible hearsay because they were not made for the purpose of medical diagnosis or treatment.

Concerning his assertion that the exhibits were inadmissible because the reports contained "extraneous acts"—the sexual acts perpetrated against K.J., who was not the indicted victim—we note that appellant once again failed to specify any particular portions of State's

Exhibit #6, the SANE report relating to L.J.'s exam, that were inadmissible because they referenced extraneous sexual offenses. Moreover, with respect to both exhibits and any portions describing extraneous sexual acts that appellant perpetrated against K.J., evidence of such acts was, as previously discussed, admissible under section 2(b) of article 38.37 of the Code of Criminal Procedure. As we noted earlier, that statute explicitly allows evidence that a defendant has committed one of the enumerated child sexual abuse offenses against a child other than the victim of the charged offense to be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with that character." Tex. Code Crim. Proc. art. 38.37, § 2(a)(1), (b). As the trial court observed, nothing in the statute limits the type of evidence regarding the separate offense—that is, nothing in the statute indicates that only testimony rather than documentary evidence is admissible under the statute. *See Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "evidence" as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact."). Thus, the evidence of the extraneous sexual offenses that appellant perpetrated against K.J.—as documented in the SANE reports—was admissible.

Appellant contends that even if the SANE reports were admissible under article 38.37, "this still does not excuse the evidence from being subject to the rules of evidence." However, article 38.37 unambiguously states that such evidence of extraneous sexual offenses is admissible under the statute "[n]otwithstanding Rules 404 and 405 [of the] Texas Rules of Evidence." *Id.* art. 38.37, § 2(b); *see* Tex. R. Evid. 404 (governing admissibility of character evidence and extraneous bad acts); Tex. R. Evid. 405 (establishing methods of proving character); *see also Robisheaux v. State*, 483 S.W.3d 205, 210 (Tex. App.—Austin 2016, pet.

27

ref'd) (noting that article 38.37 section 2(b) allows admission of separate sexual offense evidence "[n]otwithstanding Rules 404 and 405"). Additionally, to the extent that such evidence in the exhibits was in the form of hearsay, the statements were admissible under exceptions to the hearsay rule. *See* Tex. R. Evid. 803(4)(A) (establishing exception to hearsay rule for statements made for medical diagnosis or treatment), 803(6) (establishing exception to hearsay rule for business records).

Finally, appellant complains in this point of error that the trial court failed to conduct the requisite balancing test under Rule 403 before admitting State's Exhibit #7, the SANE report relating to K.J.'s exam. Once a Rule 403 objection is asserted, the trial court must engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997); *Stevens v. State*, No. 03-14-00483-CR, 2016 WL 3752915, at *9 (Tex. App.—Austin July 7, 2016, no pet.) (mem. op., not designated for publication). However, Rule 403 does not require that the balancing test be performed on the record. *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.); *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd); *see Perez v. State*, 562 S.W.3d 676, 688 (Tex. App.—Fort Worth 2018, pet. ref'd) (recognizing that "[c]ourts have uniformly held that a [R]ule 403 analysis does not have to be conducted on the record"). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined the evidence was admissible. *Distefano*, 532 S.W.3d at 31; *Belcher*, 474 S.W.3d at 848; *Hitt*, 53 S.W.3d at 706; *see Williams*, 958 S.W.2d at 195.

The record here reflects that the trial court entertained appellant's 403 objection and made its ruling, so we assume the court properly performed a balancing test even in the

28

absence of a recitation on the record. *See Williams*, 958 S.W.2d at 195 ("[A] judge is presumed to engage in the required balancing test once Rule 403 is invoked and we refuse to hold that the silence of the record implies otherwise."); *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997) ("Although appellant asserts that the trial court did not perform the balancing test, the trial court did not explicitly refuse to do the test, it simply overruled appellant's Rule 403 objections. We find nothing in the record to indicate that the trial court did not perform a balancing test, albeit a cursory one."); *see Simmang v. State*, No. 03-11-00455-CR, 2013 WL 5272919, at *7 n.17 (Tex. App.—Austin Sept. 11, 2013, pet. ref'd) (mem. op., not designated for publication) ("[T]he trial court is not required to perform the Rule 403 balancing test on the record, and when the record is silent, appellate courts must presume that the trial court performed the required balancing test.").

For the above reasons, we conclude that the trial court did not abuse its discretion in admitting either of the SANE reports. Accordingly, we overrule appellant's second point of error complaining about the trial court's admission of State's Exhibits #6 and #7.

### Error in Written Judgments

On review of the record, we observe that the written judgments of conviction in this case contain non-reversible clerical error. Each of the judgments states that the "Statute for Offense" is "22.021(f)(1) Penal Code." This statutory provision establishes that the minimum term of imprisonment for aggravated sexual assault of a child is increased to 25 years if the child victim is younger than six years of age, which is the case here. However, the applicable statutory provisions for the offenses of aggravated sexual assault of a child for which appellant was

convicted also include section 22.021(a)(1)(B) of the Penal Code, the statutory provision that defines the offense of aggravated sexual assault of a child.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgments of conviction to reflect that the "Statute for Offense" is "22.021(a)(1)(B), (f)(1) Penal Code."

## CONCLUSION

Having concluded that appellant failed to demonstrate that he received ineffective assistance of counsel and that the trial court did not abuse its discretion in admitting the SANE reports but having found non-reversible clerical error in the written judgments of conviction, we modify the trial court's judgments as described above and affirm the trial court's judgments of conviction as modified.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Modified and, as Modified, Affirmed

Filed: June 19, 2019

Do Not Publish

30