In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-22-00039-CR

**NICHOLAS DAVID MOSQUERA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-11-14063-CR**

**MEMORANDUM OPINION**

A jury convicted Nicholas David Mosquera of the third-degree felony offense of evading arrest or detention with a motor vehicle and made an affirmative finding that Mosquera used the vehicle as a deadly weapon. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A). After finding an enhancement paragraph true, the jury assessed punishment at eighteen years of confinement plus a $500 fine. *See id.* § 12.42(a) (providing enhanced punishment for habitual offenders). In three issues, Mosquera

argues that: (1) the trial court erred by failing to give a newly court-appointed attorney a ten-day continuance to prepare for trial; (2) the trial court violated his right to a speedy trial; and (3) the trial court violated his right to counsel. As discussed below, we affirm the trial court's judgment.

PERTINENT BACKGROUND

Since Mosquera's issues focus on procedural matters and alleged violations of his constitutional rights, we limit our background discussion to matters necessary to resolve those issues. *See* Tex. R. App. P. 47.1 (requiring appellate court to hand down opinion as brief as practicable).

Pretrial Background and Procedural Posture

Mosquera was arrested on November 13, 2020. Mosquera was found to be indigent and on December 4, 2020, he was appointed his first attorney, Oscar Sommers. Mosquera filed a pro se Motion to Dismiss Court-Appointed Counsel, and the certificate of service states he filed it two days after the first attorney was appointed.[1] He argued, among other things, that Sommers did not support the Black Lives Matter movement and refused to set him for a speedy trial, so he wanted Sommers removed from the case. He also requested that the trial court appoint a different attorney. On December 22, 2020, Mosquera also filed a pro se Motion for

---

[1]The record indicates it was file-stamped by the clerk on December 22, 2020.

Speedy Trial. On January 26, 2021, the grand jury indicted Mosquera for evading arrest or detention with a motor vehicle. *See* Tex. Penal Code Ann. § 38.04(b)(2). In April 2021, Mosquera filed a second pro se Motion to Dismiss Court-Appointed Counsel (Oscar Sommers) alleging similar complaints and again asked for a different attorney.

Later in April 2021, Mosquera sent correspondence to the trial court asking about several motions, including his pro se Motion for Speedy Trial and Motion to Dismiss Court-Appointed Counsel, and requested a hearing. On April 29, 2021, the trial court conducted a Zoom hearing on Mosquera's pro se Motion to Dismiss Court-Appointed Counsel. During the hearing, Sommers relayed to the court that he met with Mosquera via Zoom, which Sommers characterized as "not very fruitful." Sommers explained that Mosquera did not want to discuss the facts of his case, and instead, spent the entire time complaining about the system being biased against him and "about how I could not be unbiased because of my career path." The trial court explained that she would not remove Sommers from the case and asked Mosquera to cooperate with him. Mosquera said that he did not agree and felt that Sommers should have handled plea negotiations with the District Attorney's Office differently. Mosquera further argued that he did not believe Sommers could act in his best interest and insisted he wanted a "black attorney" and complained that trying to make him continue with Sommers would be "a waste of time" and would "be

3

keeping me in jail even longer." The trial court asked Mosquera to try to work with Sommers and explained that she did not want Mosquera to be unrepresented and they would return in a week after she considered the Motion to Dismiss Court-Appointed Counsel, and Mosquera responded, "That's fine."

On May 10, 2021, the trial court appointed Mosquera his second attorney, Charles Crowl. In a pro se letter dated May 19, 2021, Mosquera requested a hearing on various pro se motions he filed, including his Motion for Speedy Trial. During Crowl's appointment, Mosquera filed multiple pro se motions and continued to send correspondence to the trial court. On May 27, 2021, Crowl appeared at a bond hearing for Mosquera, but Mosquera repeatedly interjected and addressed the trial court directly. As Crowl explained the bond issues to the trial court, Mosquera interrupted and tried to address his Motion for Speedy Trial, among other things. The trial court stated, "Mr. Mosquera, your attorney is really on top of things[.]"Mosquera responded, "No, he is not." The trial court then told him, "Hold on. I believe everything you're asking for will be addressed by what Mr. Crowl has worked hard to put together for this Court. So I'm going to recognize your attorney of record at this time. And I'll let him go ahead and help us – guide us through these eight charges." She then assured Mosquera that she would allow him to speak after this attorney. Crowl proceeded to go through the bond amounts and what they were requesting on eight charges. The State then responded it opposed any reduction in

4

bonds as Mosquera had picked up six other felony charges while in jail for attacking guards. Crowl and Mosquera both represented to the court that he would be unable to pay even the reduced bonds. The trial court reduced the bonds on the six new charges but kept the bond amounts the same on the evading arrest charge and explained she had to consider the seriousness of the charges. The trial court said she would set the matter for trial in 90 days.

On September 7, 2021, Crowl filed "Counsel for Defendant's Motion to Clarify Scope of Counsel's Representation Regarding Hybrid-Representation." In that Motion, Crowl noted an October 25, 2021, trial setting and that Mosquera had "filed many pro se motions" while represented by counsel. Crowl further explained that Mosquera repeatedly made counsel aware "that he, Defendant, considers himself co-counsel in these matters and believes he has the right to both be represented by counsel while also representing himself." Crowl did not believe Mosquera had the right to hybrid representation and opposed it, "as it would both place counsel in an ethical quandary where he had to adopt particular motions or filings despite believing those motions lack legal merit or are procedurally incorrect. Further, it is counsel's position that allowing 'hybrid representation' would ultimately harm the Defendant when it comes to trial." Crowl asked for a hearing to address the hybrid representation and noted that he and Mosquera had significant disagreements about trial strategy.

5

On September 23, 2021, the trial court held a status hearing. During the hearing, the trial court explained Mosquera was not entitled to hybrid representation and asked whether Mosquera wanted to proceed with appointed counsel or represent himself. Mosquera maintained that he was entitled to hybrid representation, but the jail would not allow him any time in the law library to research the issue. The trial court noted that was likely due to his behavior and multiple other harassment charges he picked up at the jail. The trial court then asked Mosquera again if he wanted to represent himself or proceed with Crowl. Mosquera asked for a continuance to allow him to research whether he is entitled to hybrid representation. Crowl noted he was the second appointed attorney and had been on the case since May.

The trial court admonished,

> Mr. Mosquera, I have gone over several things with you under the *Faretta* case, which is, -- there is a list of things I would ask if you know how to do or not, how to perform as an attorney. Because if you represented yourself, you would be held to those standards. And I don't personally believe there's any amount of research in the law library that could get you up to – up to the level that you would need to be for me to have you represent yourself.
> I'm urging you again, because you don't know the Rules of Evidence, you don't know the Rules of Criminal Procedure, you told me that before. You don't know anything about how trials are conducted and how—and how to choose jurors, jury selection, all the rules that are involved during voir dire.
> Do you know how to do those things, Mr. Mosquera?

Mosquera admitted he did not know how to do those things, which is why he was requesting hybrid representation. The trial court cited several cases noting he did not

6

have an absolute right to hybrid representation and explained that although it was in her discretion whether to allow it, she did not believe it would work. The trial court reasoned,

> He is asking that it be—that counsel help him in a hybrid capacity. And I am finding that to be not in—the discretion of this Court, I'm not permitting that to happen here. And if he continues to insist on that with only the aid of counsel in a hybrid capacity, then I would regard his assertion of the right of self representation as conditional, equivocal, and ineffective. And so, I'm compelling this Defendant to accept representation by Mr. Crowl.
>  . . .
> From every moment that I have seen you before me in court, you have demonstrated that you do not cooperate with people. That you do not accept or trust attorneys who have researched this, who are experienced, it would not work. I do not think that there is any way hybrid representation would work."

During this hearing, Crowl warned Mosquera that if he refused to communicate with counsel, he may find it necessary to withdraw. Later in the hearing, the trial court told Mosquera, "I wanted to make positively sure that you understand that you have the right to represent yourself. Do you understand that?" She then inquired again if he wanted to represent himself, and he repeatedly responded that he could not give the court an answer but wanted hybrid representation and to be treated as co-counsel.

Crowl told the judge he did not think hybrid representation would succeed or be in Mosquera's best interest, because Mosquera wanted to employ strategies that Crowl believed would hurt him at trial and invite error. The State noted that

7

Mosquera has a constitutional right to represent himself, but no right to hybrid self-representation, and Mosquera had consistently requested hybrid representation and had not requested to represent himself. The court explained to Mosquera that he had a right to represent himself and a right to an attorney but not to both at the same time. The trial court told Mosquera he should do the safest thing and encouraged him to accept Crowl as attorney of record. The trial court then said, "So, what I'm understanding is you do not want to represent yourself. You do want to represent yourself if Mr. Crowl is there in hybrid representation?" to which Mosquera answered, "Yes." The trial court denied Mosquera's request for hybrid representation and asked him if he wanted to represent himself or Crowl to represent him. Mosquera again said he wanted hybrid representation. The trial court said that Mosquera had chosen hybrid representation – not to represent himself, which she was not allowing, and Crowl was the attorney of record. Mosquera then said he needed to file another Motion for Continuance, because he may have to dismiss Crowl.

About one week after this hearing, Crowl filed a Motion to Withdraw, citing a breakdown in communication. He also noted Mosquera's statements on the record that he is "deeply suspicious of Counsel and any legal advice" and that Mosquera objected to the motion. The Motion to Withdraw also mentioned an October trial setting and that granting the Motion would likely delay the trial setting, but a greater

8

harm would result if it was denied. On September 30, 2021, the trial court held a hearing on Crowl's Motion to Withdraw. At the hearing, Mosquera objected to the Motion to Withdraw, because it would require the case to be reset and "prolong it[.]" Crowl denied that he filed the Motion to delay the case, but Mosquera did not trust him and refused to follow his advice. Mosquera expressed his desire to be represented by counsel and complained about the delay. On September 30, 2021, the trial court granted Crowl's Motion to Withdraw and appointed Michael Valdez as Mosquera's third attorney.

On October 4, 2021, Valdez filed a Motion for Continuance, and Mosquera continued to file various pro se motions. On October 18, 2021, Mosquera filed another *pro se* Motion to Dismiss Court-Appointed Counsel. Mosquera complained that Valdez would not listen to him regarding strategy and asked for a different attorney. After filing his first pro se Motion to Dismiss Valdez, Mosquera filed several other *pro se* motions with the trial court, including a Motion to Dismiss the charges against him based on delay. Mosquera also filed a second pro se Motion to Dismiss Valdez in November 2021, again complaining about disagreements in trial strategy and requesting a different attorney who had "no history of working as a prosecutor[.]"

On November 16, 2021, the trial court conducted a hearing on Mosquera's pro se Motion to Dismiss Court-Appointed Counsel. The trial judge noted she

9

reviewed the Motion but found the reasons provided did not require dismissing the attorney and denied it. Mosquera told the judge, "I have a right to be heard the way I want to be heard. I don't want to be heard by Michael Valdez." The trial court explained that she did not find the allegations in the motion rose to the level of dismissing the attorney and noted that Valdez was the third attorney appointed to the case. The trial court further noted the January 24, 2022, trial setting. On November 29, 2021, Mosquera also filed a pro se Motion to Quash the Indictment and argued the trial court failed to provide him with a speedy trial. Mosquera also continued to file pro se motions up until the time of trial, even though the trial court had not dismissed Valdez as counsel.

On January 13, 2022, the trial court conducted a pretrial hearing. The trial court noted that Mosquera had requested to represent himself eleven days before a jury trial, and she asked if he was still representing himself. Mosquera then said that it was a mistake and he never asked to represent himself, is not able to do so, and lacks sufficient knowledge of the law to represent himself. The trial court responded that Valdez was appointed counsel and was willing to take over, but that Mosquera had requested another attorney. When asked why he did not want Valdez as his attorney, Mosquera complained that in their first meeting, Valdez said some things Mosquera disagreed with, and they did not have the same strategy. The trial court ruled it would not dismiss Valdez, Mosquera had been through three attorneys, and

Valdez was in charge of the case. Mosquera repeatedly interrupted throughout the hearing, and the trial court instructed him to let his attorney speak.

On January 19, 2022, the trial court continued the pretrial hearing. One of the items the trial court addressed was Mosquera's Motion for Speedy Trial and Motion to Dismiss based on his right to a speedy trial. The State argued the case was from November 2020, and they were "barely in January 2022[.]" The State further cited the four-part test for a Motion for Speedy Trial, noting: the length of delay was short given the circumstances; the reason for the delay included six more charges while he was in jail based on his conduct; and there was no prejudice or harm to Mosquera. Valdez argued that "it's the length of time that he's had to endure the incarceration during 2021. You know, COVID was horrible in 2020. But 2021, as you know, the courts began to reopen, and it could have moved along . . . he's been in jail for more than a year." The trial court then denied the Mosquera's motion seeking a dismissal on the basis that he had been deprived of his right to a speedy trial.

During this pretrial hearing, Mosquera again urged another pro se Motion to Dismiss Court-Appointed Counsel, complaining about disagreements with Valdez. The trial court again explained that this was his third attorney, and he needed to "distinguish between things that they're telling you that you disagree with and aren't happy to hear, and things that are ethically permissible and that they believe, after all their years of experience is the route to go, the strategy . . . I will certainly . . .

11

understand your discussions and disagreement, but I don't think that's a cause to dismiss an attorney." Mosquera complained, "I'm having opposing views with this attorney. He wants to go about this case and this trial the same way, and I'm telling him that's not the way I want to do it. That's not how I agree to do it." The trial court denied Mosquera's pro se Motion to Dismiss Court-Appointed Counsel.

January 25–27, 2022: Guilt/Innocence

Voir dire began on January 25, 2022, and on January 26, 2022, the guilt/innocence phase of trial commenced. When the trial court asked if the parties were ready, Mosquera's attorney announced ready, but Mosquera responded, "We are not ready. We are not ready." The trial court admonished Mosquera to speak through his attorney, and he responded, "I told you, the attorney – we need to get a continuance." Then, the following exchange occurred:

> THE COURT: No. Don't talk to me –
> MOSQUERA: I asked to dismiss the attorney because the attorney is not – he's – he doesn't have my best interest at heart. He's not doing things the way I want them to be done.
> THE COURT: Well, you're not an attorney yourself, Mr. Mosquera. You don't have the training and the experience. And we have been through –
> MOSQUERA: And that's why I need another one.
> THE COURT: Don't interrupt me while I'm talking. If you do that during the trial, this is exactly what I'm going to say is not to interrupt anymore. And that would not look good in front of a jury. Okay. So, Mr. Mosquera, Mr. Valdez needs to speak for you.

12

Mosquera continued to complain that counsel was not saying what he wanted him to say, so he would speak for himself. The trial court denied the Motion to Dismiss Court-Appointed Counsel. As the trial proceeded, Mosquera continued interrupting the proceedings, speaking over the trial judge and counsel, and the trial court admonished him repeatedly to stop talking.

While the jury was out, Mosquera addressed the trial court directly and said, "I wasn't ready for trial. I told him that I wanted a continuance but he still announced ready. . . . I said I'm not ready." Mosquera told the trial court that he was not ready, "[b]ecause it's a lot of motions that I need to file[]" in response to some of the evidence he received. Mosquera again complained that he asked for Valdez to be dismissed and that "I have actually talked to an attorney today and he gave me his card. So I would like to go with this attorney. I need a continuance." The trial court denied the requested continuance and advised Mosquera that he had provided no reason to dismiss Valdez.

As the proceedings in front of the jury resumed, Mosquera continued to interrupt and talk over counsel with the trial court repeatedly admonishing him regarding speaking out. Once the State rested, the defense moved for an acquittal and moved for a directed verdict, which the trial court denied. The defense then rested without calling any witnesses, at which point, Mosquera stated, "I'm saying do not rest. We have a defense." The trial court then asked Mosquera outside the

13

jury's presence what the problem was. Mosquera began to argue about some of the evidence admitted, and the trial court asked the attorney if the defense still wanted to rest, and the attorney answered, "We've rested, Your Honor." Mosquera disagreed with counsel's decision to rest and told the judge "that's why I said I needed another attorney. This guy is ineffective. I don't agree with him." After additional discussion with the trial court, Mosquera said, "The video shows – if he's not going to do it, he might as well get dismissed right now. I'll represent myself. I tell you in open court right now I'll represent myself. . . . I'm saying I want to represent myself and I have a right to do so. I have a right to represent myself. And we can move to get a continuance[.]" The parties agreed that Mosquera did not ask to represent himself until after Valdez rested. A discussion ensued about prior hearings and Mosquera's desire to be represented by counsel with Mosquera stating, "I said I did not feel I was educated enough to represent myself. I feel like that – I didn't go to school for this. I did not have a license in the State of Texas to practice law or anything. So I didn't feel like it was – it would be right to represent myself." The trial court explained to Mosquera that his attorney had rested the case before he said he wanted to represent himself, and she would let him represent himself but asked Valdez to sit at the table in case Mosquera had any questions. Mosquera also told the trial court he wanted to file a motion for continuance so he could prepare himself. The trial

court noted that Valdez was third in a line of experienced attorneys who represented him.

The trial court explained,

Okay. Hold on, Mr. Mosquera. Right now you're in the middle of a jury trial – we're at the end of a jury trial. Your side has rested. I'm not seeing any reason to give you a continuance or to have any other evidence before these jurors. You have been ably represented by an experience[d] attorney and experienced investigator[.]

After this, Mosquera complained about the admission of a redacted video of the police chase, which eliminated portions of him speaking about things the trial court determined would be prejudicial to him. The trial court ultimately told him to stop talking and that "I have heard your argument. I do not think it has any merit. I think it is very ill-advised for you to represent yourself, but . . . you have the right to do that. I'm going to keep Mr. Valdez at the table there to advise you."

Outside the jury's presence, Mosquera again expressed his desire to file a motion for continuance. The trial court noted that he made an oral motion for continuance, which she denied. Mosquera said he wanted to file a written motion for continuance. The trial court allowed him to write a motion and provided him a copy of Texas Code of Criminal Procedure article 29.13 governing continuances after a trial had begun, and he filed his motion. The Motion for Continuance requested six additional months "to gather proper evidence, subpoena witnesses and prepare a genuine, valid defense[.]" The State argued that the Motion for Continuance

15

contained a fatal defect of being unverified and did not state a reason that would justify a continuance under article 29.13, which required some unexpected occurrence which no reasonable diligence could anticipate. The State further contended,

> What's happened here is that Mr. Mosquera has had these charges pending for months. He's been through three attorneys, none of which he would reasonably assist in his defense. He's been obstreperous, obstructionist, talking throughout this trial, and has really done everything to – to prevent the trial from taking place. Nonetheless he's received an extremely fair trial, and has been ably assisted by counsel, right up to the point where counsel made the very prudent decision to rest behind our case.
>
> After defense counsel rested, then Mr. Mosquera decided that he wanted to derail the trial further by representing himself. He's attempting to make a mockery of these proceedings and has completely failed to state anything that would even begin to justify a continuance under Article 29.13.
>
> And for those reasons, we ask that the pro se defendant's motion for continuance be denied.

The trial court allowed Mosquera to swear to the truth of the Motion for Continuance on the record since he lacked access to a notary. Mosquera responded that the unexpected occurrence under article 29.13 was him representing himself. The trial court then went through the requirements for a continuance under article 29.13 after trial begins and reasoned he failed to explain what witnesses he would need to bring or how any evidence would be material to his case. Mosquera again complained about the admission of a police video of the chase and his arrest, arguing it was incomplete and inauthentic, and the trial court explained that she granted his

16

attorney's request to redact the video and exclude certain portions that were unduly prejudicial to him. The trial court denied the Motion for Continuance and found it did not allege specific facts required by article 29.13. The proceedings in front of the jury did not resume that day while the trial court addressed the issues Mosquera raised after he insisted on representing himself. Despite being instructed by the trial court to review the charge and determine whether he had objections, Mosquera refused to do so and instead focused on re-arguing the Motion for Continuance the trial court denied.

The next day, when trial resumed, Mosquera filed a third pro se Motion to Dismiss Court-Appointed Counsel Valdez. In the Motion, Mosquera argued he did not agree with Valdez's strategy, and he requested a different attorney. The trial court told Mosquera that Valdez was dismissed yesterday, and he was representing himself. Mosquera also filed another Motion for Continuance. Mosquera then argued that he disagreed with representing himself without help and stated, "I don't want to represent myself. I have a right to counsel. And I do want counsel. I just don't want Valdez as counsel." The trial court replied,

> Mr. Mosquera, that is totally different from what you told us yesterday afternoon, after we had the jurors out – back and forth, out and in to this courtroom. And then I listened to what you had to say and it was that you wanted to represent yourself. And I went over with you the—what that would mean, which is letting me know if you had any corrections of the jury charge, doing your own closing arguments. I asked Mr. Valdez to sit at your table since he's been your appointed counsel

17

through all these . . . you said no. This morning you don't even want him sitting there. So, you are – I'll look at your Motion to Dismiss. He's already off of the case. And he's not even sitting at your table at your request today."

The trial court determined the Motion to Dismiss Court-Appointed Counsel was moot, because he was already off the case. Mosquera argued he needed a continuance so he could get an attorney, which the trial court denied, reasoning he had three attorneys, and yesterday, Mosquera advised he wanted to represent himself and would not allow Valdez to sit near the counsel table.

When Mosquera closed, he objected and said he did not agree to represent himself but did not want Valdez to represent him, knew nothing about the law, and asked the court for a continuance to retain a lawyer. Following closing arguments, the jury found Mosquera guilty of the offense of evading arrest or detention with a motor vehicle and found affirmatively on the deadly weapon question.

January 27–28, 2022: First Two Days of Punishment Phase

During the punishment phase of trial and as the State presented its opening statement, Mosquera repeatedly interrupted. Outside of the jury's presence, the trial court told Mosquera that "your constant disruptive behavior is causing a delay in everything that we are doing in this trial." The trial court then asked about having Mosquera removed from the courtroom. Mosquera told the trial court "You can't do that. That's illegal." The trial court responded,

18

> I can do that, Mr. Mosquera. . . . This has got to be an efficient good, clean trial. And, Mr. Mosquera, everything you're doing is making that a very disruptive mess. I'm not going to have those jurors sit out here and listen to this. You would think that your own behavior, you would control that in front of the jury because you don't want them to see you acting like that. . . . You have been rude, disruptive, belligerent."

Mosquera demanded an attorney and cited his right to counsel, and the trial court answered, "You had a right to counsel and I've given you three. You wanted all of them off of your case. And then yesterday you told me . . . you want to represent yourself." The trial court told Mosquera she was not going to appoint him another attorney "this late in the game." Mosquera argued that he never waived his right to an attorney and again said he needed an attorney. He then told the trial court, "I've never waived my right to an attorney. I can have as many attorneys as I want to." He later asked for a continuance again "so that I can get the evidence that I need for an acquittal" and "get an attorney to represent me." The trial court explained that his request for an attorney at 1:25 p.m. after the guilty verdict and while trying to start the punishment phase was untimely and for "the sole purpose of delaying this trial further and disrupting the order that I'm trying to establish in the trial. So it is denied." Mosquera continued to argue to the judge about matters she had ruled on. The trial judge then again warned him he could be removed from the courtroom for refusing to follow any rules. The trial court finally told Mosquera,

> I have been extremely patient with you, Mr. Mosquera. And I'm so careful and cautious that this jury doesn't hear this disruption, that

19

they don't see you in a certain light, and yet you're doing everything you can to defeat all of that. And by your outbursts, in the presence of the jury. The best that I can do then is to excuse them out of this room so that we can have a discussion. But those discussions are over. Everything that you have been asking for has been denied. I find that your request for an attorney now would be only a delay tactic. That is not – an attorney has been yours three different times and you don't want any of those people to represent you for various reasons. So as of yesterday afternoon, you wanted to be on your own and that's where you are. You made that request in open court on the record. And we take those kinds of things very, very seriously. So when you invoke that right to represent yourself, that's exactly what I did, is grant your right.

So, now at 1:28 pm the afternoon in the beginning of the punishment phase, this is not the time to request an attorney.

Mosquera again requested an attorney and contended he never waived that right, but the trial court explained that she considered "yesterday's request a waiver of that right. And then when you further told Mr. Valdez this morning that he couldn't even sit at counsel table with you, further waived that you wanted to do this on your own." The trial court repeatedly asked Mosquera if he would allow the State to finish its opening, which Mosquera would not directly answer and insisted on speaking to the trial court about other matters that it had ruled on. Mosquera then made an oral motion for a court-appointed attorney. After further discussion, the trial court appointed a fourth attorney, Benton Baker, to represent Mosquera for the rest of punishment. The trial court provided background information to counsel.

Baker requested a ten-day continuance to prepare. The trial court noted that was impractical since they already had a jury. The State also argued this was the

20

opposite of "unexpected" – it was Mosquera's deliberate choice and in context, was clearly "a tactic." The trial court overruled the request for ten days extra to prepare but noted that she would have the State finish then recess so Mosquera could have over the weekend and start Monday. Mosquera then again requested ten days, and the trial court replied, "The reason that you are asking for a continuance, basically, is based upon your own behavior and a willful withdrawal of your representation of yourself. And now I have been able to find an attorney to represent you during this punishment phase." The State completed its punishment opening, then began presenting witnesses and evidence, which it continued the next day, January 28, 2022. Before testimony began on the second day of the punishment proceedings, Mosquera again repeatedly tried to object and interrupted counsel as he spoke, so the trial court again admonished him. The second day of the punishment proceedings, the State rested its case-in-chief. The defense told the trial court it would like to adjourn to prepare, so the trial court agreed to resume the proceedings on Monday.

January 31, 2022: Third Day of Punishment

On the third day of punishment, outside the jury's presence, Mosquera's counsel moved for a continuance until the afternoon, which the trial court denied, noting it had given the defense the weekend to prepare. Counsel explained that the investigator working on the case had been unable to locate any mitigation witnesses,

and neither Mosquera nor prior counsel had provided any. The State noted that over the weekend, Mosquera was allowed privileges to use the phone to locate witnesses, and he declined to do so. Additionally, before the jury entered the courtroom, the trial court repeatedly admonished Mosquera to stop talking out of turn and threatened to have him removed if he did not follow the rules, and he told the judge, "Kick me out of the court then."

The defense offered records showing that Mosquera had formed his own company and incorporated a business, which the trial court admitted. After counsel requested a continuance to find witnesses, which the trial court denied, the defense rested. The jury found the enhancement true and assessed punishment at eighteen years of confinement plus a $500 fine.

ANALYSIS

Issue One: Denial of Motion for Continuance

In his first issue, Mosquera complains that the trial court erred by denying his Motion for Continuance to allow newly appointed counsel ten days to prepare for the punishment phase of trial. In support of this argument, Mosquera cites Texas Code of Criminal Procedure article 1.051(e). The State counters that the applicable statute that should govern this analysis is article 1.051(h).

Generally, "appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in

22

writing or on the record in open court." Tex. Code Crim. Proc. Ann. art. 1.051(e).

Yet an exception to this general rule is found in article 1.051(h):

> A defendant may withdraw a waiver of the right to counsel at any time but is not entitled to repeat a proceeding previously held or waived solely on the grounds of the subsequent appointment or retention of counsel. If the defendant withdraws a waiver, the trial court, in its discretion, may provide the appointed counsel 10 days to prepare.

*Id.* art. 1.051(h); *see Barnes v. State*, 921 S.W.2d 881, 884 (Tex. App.—Austin 1996, pet. ref'd) (explaining that 1.051(h) "creates an exception to the general rule of article 1.051(e)"). Article 1.051(h) applies to situations where an appellant withdrew his prior waiver of right to counsel. *See* Tex. Code Crim. Proc. Ann. art. 1.051(h); *Cole v. State*, 929 S.W.2d 102, 103 (Tex. App.—Beaumont 1996, pet. ref'd).

Mosquera was indigent, and three attorneys were appointed to him before trial. Mosquera, for various reasons, criticized each of these appointed attorneys. He repeatedly moved to dismiss two of them, demanded the trial court replace them with counsel of his choosing, and refused to cooperate with them in preparing his defense. He wanted an attorney that would follow his instructions and agree with his trial strategy. He also repeatedly demanded hybrid representation and to be treated as co-counsel. During the guilt/innocence phase of trial and after his attorney rested, when the trial court refused Mosquera's request to dismiss and replace his third appointed attorney, Mosquera demanded to represent himself. Before punishment, Mosquera attempted to revoke his waiver of counsel and requested appointment of

23

yet another attorney. After initially denying this request, the trial court granted it and appointed Mosquera his fourth attorney for the punishment proceedings. We agree that the applicable statutory provision in this circumstance given Mosquera's withdrawal of his waiver of right to counsel is article 1.051(h).

We review a trial court's decision on a motion for continuance under article 1.051(h) for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 1.051(h) (vesting trial court with discretion to grant a continuance when defendant withdraws waiver of right to counsel); *Cole*, 929 S.W.2d at 103 (noting trial court was within its discretion to deny ten-day continuance under article 1.051(h)). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Heiselbetz v. State*, 906 S.W.2d 500, 517 (Tex. Crim. App. 1995). Given the record before us and multiple delays caused by Mosquera's alternating demands for hybrid representation, self-representation, and withdrawing his waiver of his right to counsel during the middle of trial, the trial court's decision to deny a continuance was within the zone of reasonable disagreement. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 1.051(h). The trial court recessed the punishment proceedings over the weekend to give counsel time to prepare. Further, jail staff provided Mosquera phone privileges over the weekend, despite his documented poor behavior, to attempt to contact potential witnesses, which he refused to do. We conclude the trial court did not abuse its discretion in denying appointed counsel's

24

requested continuance after Mosquera withdrew the waiver of his right to counsel during trial. *See* Tex. Code Crim. Proc. Ann. art. 1.051(h); *see Cole*, 929 S.W.2d at 103; *see also McCain v. State*, No. 02-17-00210-CR, 2018 WL 3059964, at *8 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op., not designated for publication) (concluding that the trial court did not err in denying continuance to allow appointed counsel additional time to prepare where defendant withdrew waiver of right to counsel the Friday before a Monday trial). We overrule issue one.

## Issue Two: Right to Speedy Trial

In his second issue, Mosquera contends the trial court violated his right to a speedy trial. The State counters that the delay was largely attributed to Mosquera's counsel changes and six new charges he picked up for "his assaultive conduct while incarcerated."

A criminal defendant is guaranteed the right to a speedy trial. *See* U.S. CONST. amend. VI; Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 1.05. When determining whether a defendant has been denied his right to a speedy trial, we balance four factors: "(1) the length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused." *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997) (citing *Barker v. Wingo*, 407 U.S. 514, 530–31 (1972)); *see also Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). In conducting this balancing test, "we apply a bifurcated standard of review: an abuse

25

of discretion standard for the factual components, and a *de novo* standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (citation omitted); *Fields v. State*, No. 09-21-00046-CR, 2022 WL 2231194, at *2–4 (Tex. App.—Beaumont June 22, 2022, no pet.) (mem. op., not designated for publication) (citations omitted). We also apply a *de novo* standard in balancing the *Barker* factors. *Johnson*, 954 S.W.2d at 771. Alone, no single factor is sufficient to require a trial court to find that a Sixth Amendment violation occurred. *See Barker*, 407 U.S. at 533; *Zamorano*, 84 S.W.3d at 648. Instead, we must engage in a balancing process to determine whether the delays in bringing a defendant's case to trial deprived the defendant of a speedy trial. *See Barker*, 407 U.S. at 533; *Zamorano*, 84 S.W.3d at 648; *see also* U.S. CONST. amend. VI.

Length of Delay

First, we look at the length of delay. *See Barker*, 407 U.S. at 530; *Johnson*, 954 S.W.2d at 771. Mosquera was arrested on November 13, 2020, indicted on January 26, 2021, and trial began on January 25, 2022. Generally, delay approaching one year is "presumptively prejudicial" and sufficient to trigger a speedy trial inquiry. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (citations omitted); *see also Doggett v. United States*, 505 U.S. 647, 651–52 & n.1 (1992). The length of the delay is measured from the time the defendant was arrested or formally accused. *Shaw*, 117 S.W.3d at 889. We also look at "the extent to which the delay

26

stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652; *see also Zamorano*, 84 S.W.3d at 649. There was an approximate delay of fourteen months from the time Mosquera was arrested and the start of trial, which the State concedes is sufficient to trigger the analysis of the remaining *Barker* factors. The fourteen-month delay only extended slightly beyond the one-year "presumptively prejudicial" period. *Doggett*, 505 U.S. at 652; *see also Zamorano*, 84 S.W.3d at 649. Since the length of the delay did not stretch long beyond the bare minimum to trigger the speedy trial inquiry, this factor does not weigh heavily against the State. *See Doggett*, 505 U.S. at 652 (explaining "the presumption that pretrial delay has prejudiced the accused intensifies over time"); *Zamorano*, 84 S.W.3d at 649 (noting same); *see also Dragoo*, 96 S.W.3d at 314 (discussing length of the delay beyond the triggering period and explaining the longer the period, the more heavily it is weighed against the State).

Reasons for Delay

We next look to the reasons for the delay. *See Barker*, 407 U.S. at 530; *Johnson*, 954 S.W.2d at 771. Once it is determined that a presumptively prejudicial delay occurred, the State bears the initial burden of explaining the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *Comeaux v. State*, 413 S.W.3d 176, 190–92 (Tex. App.—Beaumont 2013), *aff'd*, 445 S.W.3d 745 (Tex. Crim. App. 2014). Under *Barker* we give different weights to the reasons for delay. *Barker*, 407

U.S. at 531; *Munoz v. State*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). A "deliberate attempt to delay the trial" is weighed heavily against the government. *Munoz*, 991 S.W.2d at 822 (quoting *Barker*, 407 U.S. at 531). We weigh less heavily against the government a "'more neutral reason such as negligence or overcrowded courts[.]'" *Id.* (quoting *Barker*, 407 U.S. at 531). We do not weigh a valid reason for the delay against the government at all. *See id.* (valid reason for the delay "should serve to justify appropriate delay"). Finally, a delay attributable in whole or in part to the defendant may constitute a waiver of a speedy trial claim. *Id.* (citation omitted).

The record is silent about any reason for the delay attributable to the State. Here, the State contends that the delay is "entirely attributable to the appellant's pretrial antics." The record supports this assertion. During the January 19, 2022, pretrial hearing on Mosquera's Motion to Dismiss for lack of a speedy trial, the State noted that delays in the trial setting were due to the other charges Mosquera picked up while he was incarcerated. The State filed a Notice of Extraneous Offenses it intended to use at trial outlining multiple incidents where Mosquera had assaulted guards by spitting on them, throwing urine at them, hitting them, and exposing himself to female guards as well as threatening to shoot an officer.

During the fourteen months this case was pending, Mosquera moved to dismiss Sommers and Valdez, citing disagreements over trial strategy. He also

demanded in these motions that he be appointed a different attorney. Crowl moved to withdraw after Mosquera refused to follow his advice and communicate with him, despite being admonished to do so. The attorneys reported to the court that Mosquera refused to assist with his defense and follow their advice. During one of the many pretrial hearings, the trial court refused to dismiss Valdez before the trial, finding the reasons listed in the pro se motion did not require dismissal. The trial court also noted the January 2022 trial setting and explained that Valdez was the third appointed attorney on the case. The trial court added that Mosquera did not have a right to hybrid representation and recommended he keep Valdez as counsel, because Mosquera demonstrated he did not have the knowledge to represent himself. In another pretrial hearing, the court repeatedly tried to determine whether Mosquera wanted to represent himself, which he refused to answer directly. Rather, he told the court he wanted to be represented by an attorney of his choosing and treated as co-counsel. We cannot conclude that the reason for the delay weighs against the State.

Nothing in the record shows that bad faith by the State contributed to any delay in the trial. At a May 2021 bond hearing, the trial court noted it wanted to set the case as quickly as possible and preferably within ninety days. On October 4, 2021, Mosquera's third appointed attorney filed a Motion for Continuance noting an October trial setting and cited his recent appointment as the basis for the continuance. As discussed, the record shows that three attorneys were appointed to

represent Mosquera due to his demands and conduct. As for the delay, the State met its burden of establishing that it was attributable to Mosquera's conduct, thus this factor weighs against Mosquera. *See Emery*, 881 S.W.2d at 708–09; *Wells v. State*, 319 S.W.3d 82, 88–89 (Tex. App.—Austin 2010, pet. ref'd) (concluding delay was attributable to appellant's difficulties with appointed counsel, including his motions to dismiss counsel and counsel's motions to withdraw such that "this delay tips the scales against the appellant"); *Simonsen v. State*, 662 S.W.2d 607, 611 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (concluding delay was attributable to defendant where he had an "apparent inability to work with" appointed counsel, among other things).

Assertion of the Right

We next look at when and how the defendant asserted his right to a speedy trial. *See Barker*, 407 U.S. at 528–29; *Munoz*, 991 S.W.2d at 825. A defendant's assertion or failure to assert his speedy-trial right is entitled to strong evidentiary weight when determining whether he was deprived of the right. *Balderas v. State*, 517 S.W.3d 756, 771 (Tex. Crim. App. 2016); *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008). Motions for continuance may undercut an appellant's claimed desire for a speedy trial. *See Emery*, 881 S.W.2d at 709. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because

30

it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283 (citing *Zamorano*, 84 S.W.3d at 651 n.40); *see also Balderas*, 517 S.W.2d at 771.

In December 2020, about a month after his arrest and prior to indictment, Mosquera filed a pro se Motion for Speedy Trial with a Motion to Dismiss Court-Appointed Counsel. In April and May 2021, Mosquera sent correspondence directly to the court and asked for a hearing on his Motion for Speedy Trial, among other things, despite being represented by counsel. In May 2021, during a bond hearing, Mosquera addressed the trial court directly and mentioned his Motion for Speedy Trial. In October 2021, Mosquera filed a pro se Motion to Dismiss "due to delay." In November 2021, he also filed a pro se Motion to Quash the Indictment based on the violation of his right to a speedy trial.

Before trial, as discussed above, the record reflects that Mosquera refused to cooperate with appointed counsel and repeatedly requested that attorneys be removed from his case when they disagreed with his trial strategy. On October 4, 2021, Mosquera's third appointed attorney filed a Motion for Continuance of an October 25 trial setting based on his recent appointment as counsel. On January 26, 2022, Mosquera disputed his court-appointed attorney's announcement of "ready," stated he was "not ready," and told the court "we need to get a continuance." Mosquera continued to complain to the court about his court-appointed counsel, and he told the trial court he wanted a continuance during the guilt/innocence phase of

trial. After the defense rested, Mosquera insisted on representing himself, orally requested a continuance, then filed a handwritten Motion for Continuance, representing that he would now be representing himself and needed more time to prepare. The next day, Mosquera filed another pro se Motion for Continuance, stating he needed more time to hire an attorney. The State argued against each of his requests to continue the proceedings, and the trial court denied his motions explaining that the trial court had appointed Mosquera three different attorneys.

Although Mosquera promptly invoked his right to a speedy trial, his conduct before and during the trial undercuts his assertion of his claim that the State denied him of his right to s speedy trial. *See Balderas*, 517 S.W.2d at 771; *Cantu*, 253 S.W.3d at 283; *Emery*, 881 S.W.2d at 709. To the contrary, it was Mosquera's refusal to cooperate with counsel, his repetitive filing of pretrial motions seeking to dismiss the charges that had no legal or factual support, and his repeated requests for continuance that lead us to weigh this factor against him. *See Balderas*, 517 S.W.2d at 771; *Cantu*, 253 S.W.3d at 283; *Emery*, 881 S.W.2d at 709.

Prejudice to the Defendant

The fourth factor we look at is whether the defendant was prejudiced by the delay. *See Barker*, 407 U.S. at 532; *Cantu*, 253 S.W.3d at 280; *Munoz*, 991 S.W.3d at 821. When examining whether there was prejudice caused by delay, we look to these interests a speedy trial was designed to protect: "(i) to prevent oppressive

pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532 (citations omitted); *Cantu*, 253 S.W.3d at 285; *Dragoo*, 96 S.W.3d at 316. "Of these types of prejudice, the last is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Cantu*, 253 S.W.3d at 285 (quoting *Dragoo*, 96 S.W.3d at 316). "The defendant has the initial burden to make a showing of prejudice." *Emery*, 881 S.W.2d at 709.

With the first interest, the record does not show that Mosquera's "pretrial incarceration was used as an instrument of oppression." *Comeaux*, 413 S.W.3d at 191. The record shows that he was granted bond and the trial court held a hearing in which it reduced the bond amounts on multiple related charges. *See id.* Without evidence of oppression, this interest does not support finding prejudice. *See id.*

As to the second interest, Mosquera fails to argue the incarceration "delay caused him any 'anxiety or concern beyond the level normally associated with being charged with a felony....'" *Id.* (quoting *Shaw,* 117 S.W.3d at 890). Rather, the only contention Mosquera makes on appeal regarding the prejudice to him was the frustration experienced by the delay and his continued incarceration, which led to six more charges being brought against him. Mosquera implies that the delay in the proceedings caused his frustration, which led him to act out. The record does not support his claim. Instead, the record shows that Mosquera began assaulting jail staff

33

shortly after he was jailed, with additional assaults that occurred after that which he failed to tie to any specific delay.. The additional charges he incurred while in jail are attributable to Mosquera's conduct, as he failed to prove they were caused by any specific delay attributable to the State. This interest therefore does not weigh in favor of a finding of prejudice.

Finally, under the third interest, we must examine whether the delay impaired Mosquera's ability to present a defense. *See Barker*, 407 S.W.3d at 532; *Comeaux*, 413 S.W.3d at 191. Under this prong, an "appellant must show that the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); *Comeaux*, 413 S.W.3d at 191. Mosquera does not complain that his defense was impaired because of lost evidence, destroyed evidence, or that witnesses were no longer available to testify due to the delay. Thus, we conclude this interest likewise does not weigh in favor of a finding of prejudice. *Harris*, 489 S.W.2d at 308; *Comeaux*, 413 S.W.3d at 191.

Based on this record and balancing the four *Barker* factors, we conclude the delay Mosquera complains of did not result in a violation of his right to a speedy trial. *See Barker*, 407 at 532; *Kelly v. State*, 163 S.W.3d 722, 724, 729–30 (Tex. Crim. App. 2005) (balancing the *Barker* factors and concluding that seventeen-

34

month delay did not violate defendant's right to a speedy trial); *Dragoo*, 96 S.W.3d at 316 (concluding that on balance, three-and-a-half-year delay did not violate right to speedy trial). We overrule issue two.

Issue Three: Right to Counsel

In his third issue, Mosquera contends the trial court violated his right to counsel. In support of this issue, Mosquera argues that he consistently expressed a desire for counsel, the trial court failed to properly admonish him about the dangers of self-representation, and he did not sign a waiver. Specifically, Mosquera complains that he was denied counsel in closing argument in the guilt-innocence phase of the trial and the part of the punishment phase of his trial before the trial court appointed an attorney to pick up where Mosquera's representation stopped.

A criminal defendant has the right to assistance of counsel and the right to waive counsel and represent himself. *See* U.S. CONST. amends. VI, XIV; Tex. Const. art. 1 § 10; Tex. Code Crim. Proc. Ann. art. 1.05. The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant's right to counsel. *See Thomas v. State*, 550 S.W.2d 64, 67 (Tex. Crim. App. 1977). Still, the right to appointed counsel doesn't grant a defendant the right to appointed counsel of the defendant's choice. *See id.* at 68.

The Sixth Amendment also implies that a criminal defendant has the right to waive counsel and represent himself. *See Faretta v. California*, 422 U.S. 806, 819

35

(1975). A waiver of counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *See id.* at 834–36; *see also Godinez v. Moran,* 509 U.S. 389, 400–01 (1993); *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex. Crim. App. 1997). "The decision to waive counsel and proceed pro se is made 'knowingly and intelligently' if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." *Collier*, 959 S.W.2d at 626 (citing *Faretta,* 422 U.S. at 834–36). A written waiver under article 1.051(g) is not mandatory. *See Burgess v. State*, 816 S.W.2d 424, 430–31 (Tex. Crim. App. 1991). Even so, the trial court must make a defendant "aware of the dangers and disadvantages of self-representation," so that the record establishes he knew what he was doing and made an informed decision. *Faretta,* 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); *see also Goffney v. State,* 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). The record must show the trial court thoroughly admonished the defendant. *Faretta*, 422 U.S. at 834–36; *Collier*, 959 S.W.2d at 626 n.8. "[T]he record must be sufficient for the reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation." *Goffney*, 843 S.W.2d at 585 (citation omitted). In other words, "[w]hen a defendant asserts his pro se rights, analysis must center *not* on a traditional waiver of counsel analysis, but on whether the defendant is aware of the dangers and disadvantages of self-

36

representation." *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). In determining whether a defendant's waiver of counsel was knowingly and intelligently made, we consider the totality of the circumstances, including the accused's background, experience, and conduct. *See Grant v. State*, 255 S.W.3d 642, 647–48 (Tex. App.—Beaumont 2007, no pet.). The totality of the circumstances may include a defendant's education or sophistication, the simplicity of the charge, and the stage of the proceeding. *Id.* at 648. Other considerations include whether counsel represented defendant before trial, whether standby counsel was appointed, and whether a defendant had prior experience with the criminal justice system. *Id.*

A trial court may replace appointed counsel for good cause. *See* Tex. Code Crim. Proc. Ann. art. 26.04(j)(2). Yet "[a]ppointment of new counsel is a matter solely within the discretion of the trial court[,]" and the "trial court is under no duty to search for a counsel until an attorney is found who is agreeable to the accused." *Solis v. State*, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990); *see King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "A defendant does not have the right to choose appointed counsel, and unless he waives his right to counsel and chooses to represent himself, or shows adequate reasons for the appointment of new counsel, he must accept court-appointed counsel." *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.) (citation omitted); *see Renfro v. State*, 586 S.W.2d 496, 499–500 (Tex. Crim. App. 1979); *Trammell v. State*, 287 S.W.3d 336,

343 (Tex. App.—Fort Worth 2009, no pet.) ("Texas courts have specifically held that an indigent defendant does not have a right to the counsel of his own choosing."). Personality conflicts and disagreements concerning trial strategy are typically not grounds for withdrawal. *King*, 29 S.W.3d at 566. A defendant's right to counsel cannot be manipulated to obstruct the judicial process or interfere with the administration of justice. *Id.*

The record reflects that Mosquera struggled to get along with multiple appointed attorneys. Several months before trial, during the September 2021 status hearing, the trial judge explained to him what his options were since she was not allowing hybrid representation – he could proceed with appointed counsel or he could represent himself, which he had an "absolute right" to do. The trial court then admonished him about the dangers of self-representation, advised him against it, and encouraged him the safest thing would be to proceed with appointed counsel. He continued to insist on hybrid counsel and acknowledged he did not have legal knowledge, but the trial court explained,

> He is asking that . . . counsel help him in a hybrid capacity. And I'm finding that to be not in – the discretion of this Court, I'm not permitting that to happen here. And if he continues to insist on that with only the aid of counsel in a hybrid capacity, then I would regard his assertion of the right of self representation as conditional, equivocal and ineffective. And so, I'm compelling the defendant to accept representation by Mr. Crowl.

*See Hathorn v. State*, 848 S.W.2d 101, 123 n.12 (Tex. Crim. App. 1992) (citing

*Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986)) ("[A]n accused's

right to proceed pro se does not attach until he clearly and unequivocally asserts it.").

The reasons Mosquera argued for dismissing his appointed attorneys were disagreements on trial strategy and personal conflicts, which do not justify dismissing an attorney. *See King*, 29 S.W.3d at 566. The trial court had no duty to search for appointed counsel agreeable to Mosquera. *See Renfro*, 586 S.W.2d at 499–500; *Trammell*, 287 S.W.3d at 343; *Maes*, 275 S.W.3d at 71. Further, although a trial court has discretion to allow hybrid representation, there is no right to hybrid representation. *Hathorn*, 848 S.W.2d at 123; *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989). Given Mosquera's difficulties following the advice of counsel and disagreements over strategy, we hold the trial court was not outside the zone of reasonable disagreement in denying it Mosquera's request for hybrid representation. *See Hathorn*, 848 S.W.2d at 123 n.12; *Scarbrough*, 777 S.W.2d at 92; *Ganther v. State*, 187 S.W.3d 641, 648 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (discussing trial court's discretion in permitting hybrid representation).

Against this backdrop of prior discussions regarding Mosquera's right to counsel, demands for new attorneys, demands for hybrid representation, and admonishments, we turn to Mosquera's decision to represent himself during the middle of trial. After his attorney rested for the guilt/innocence phase, Mosquera

demanded to represent himself, claiming that he was unhappy that the strategy employed by his appointed counsel. The trial court asked Mosquera if he wanted to represent himself, and he said he did "100 percent." The trial court again admonished Mosquera it was "very ill-advised" for him to represent himself, but he had a right to do so. The trial court asked his appointed counsel to remain at the table in case Mosquera had any questions, but Mosquera insisted he did not want the attorney there. In the guilt-innocence phase of the trial, the trial court then allowed Mosquera to represent himself during charge conference and in closing argument. As discussed above, the record shows that in a prior status hearing and during trial the trial court explained to Mosquera the pitfalls of self-representation and advised against it, yet he exercised this right to self-representation despite having acknowledged his limitations. *See Faretta*, 422 U.S. at 835; *Collier*, 959 S.W.2d at 626 n.8; *Goffney*, 843 S.W.2d at 585. Thus, when we examine the record as a whole, it shows Mosquera was fully aware of the dangers and disadvantages of self-representation and that he knowingly and intelligently waived his right to counsel. *See Johnson*, 760 S.W.2d at 278.

The next day, before closing arguments began, Mosquera attempted to withdraw his waiver of counsel, and he asked the trial court to appoint another attorney to represent him. The trial court refused his request and required Mosquera to continue to represent himself in the closing argument part of the guilt/innocence

phase of his trial. After the jury found Mosquera guilty, he was still representing himself when the punishment phase of the trial began. At the beginning of the State's opening statement, Mosquera was so disruptive that the trial court had to stop the proceedings and send the jury out of the courtroom. At that point, the trial court denied Mosquera's request for an attorney as untimely and found that it was "for the sole purpose of delaying the trial further and disrupting the order that I'm trying to establish in the trial." Yet Mosquera persisted in asking for an attorney, and an attorney who was present in the courtroom offered to assist. The trial court and Mosquera agreed to allow the attorney who volunteered to represent Mosquera to represent him during what remained the rest of the trial.

As is clear from this record, Mosquera made continuous demands to change attorneys and represent himself in an effort to affect the outcome of proceedings. Under Texas law, "[a] defendant may not use his right to counsel to manipulate the court or to delay his trial." *Culverhouse v. State*, 755 S.W.2d 856, 861 (Tex. Crim. App. 1988); *see also Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976) (citations omitted). In the interest of minimizing disruptions and maintaining continuity at trial, "an accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel." *Webb*, 533 S.W.2d at 784 (citations omitted). Likewise, the defendant may only withdraw a waiver of his right to counsel when the decision will not disrupt the

41

orderly administration of trial court business. *See Medley v. State*, 47 S.W.3d 17, 23 (Tex. App.—Amarillo 2000, pet. ref'd) (noting defendant does not have the right to repeatedly alternate his position on the right to counsel and delay the trial or obstruct the orderly administration of justice); *see also Davis v. State*, No. 09-15-00450-CR, 2017 WL 1953277, at *2 (Tex. App.—Beaumont May 10, 2017, no pet.) (mem. op., not designated for publication). Generally, a defendant seeking to withdraw a previous waiver of a right is entitled to do so if his request is made "sufficiently in advance of trial such that granting his request will not: (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State." *See Marquez v. State*, 921 S.W.2d 217, 223 (Tex. Crim. App. 1996) (discussing the withdrawal of a waiver of the right to a trial by jury); *Medley*, 47 S.W.3d at 24 (applying *Marquez* analysis to waiver of the right to counsel). A trial court has discretion to grant or deny a request to change counsel on the morning of trial. *Medley*, 47 S.W.3d at 23 (citing *United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984)); *see also Davis*, 2017 WL 1953277, at *2. A trial court does not abuse its discretion by denying a request for appointed counsel when it correctly determines a defendant is manipulating the right to counsel for purposes of delay. *See Davis*, 2017 WL 1953277, at *2 (citations omitted).

We have already described Mosquera's refusal to work with counsel and his outbursts during the trial. As to his alternating demands for self-representation and

a new attorney, the trial court found he engaged in the conduct for the purpose of the delay. *See id.* Even though the trial court ultimately appointed another attorney to represent Mosquera when a volunteer appeared in the courtroom acceptable to the court and to Mosquera, the trial court did not abuse its discretion on this record by requiring Mosquera to represent himself in response to his representation that he wanted to represent himself. *See id.*; *see also Culverhouse*, 755 S.W.2d at 861; *Webb*, 533 S.W.2d at 784; *Medley*, 47 S.W.3d at 23.

Based on the totality of the circumstances, even absent a written waiver, the trial court sufficiently admonished Mosquera about the dangers of representing himself, and the record shows Mosquera knowingly and intelligently chose to do so, thereby effectively waiving his right to counsel. *See Faretta*, 422 U.S. at 835; *Collier*, 959 S.W.2d at 626 n.8; *Goffney*, 843 S.W.2d at 585; *Burgess*, 816 S.W.2d at 430–31. The record supports the trial court's finding that Mosquera used his right to counsel and right to self-representation as a delay tactic. *See Culverhouse*, 755 S.W.2d at 861; *Webb*, 533 S.W.2d at 784; *Medley*, 47 S.W.3d at 23. Accordingly, we also conclude the trial court did not abuse its discretion by requiring Mosquera to proceed pro se in the periods in which he represented himself. *See also Culverhouse*, 755 S.W.2d at 861; *Webb*, 533 S.W.2d at 784; *Medley*, 47 S.W.3d at 23. We overrule issue three.

CONCLUSION

Having overruled each of Mosquera's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on July 21, 2023
Opinion Delivered September 20, 2023
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.

44